[L.A. No. 30994. Feb. 20, 1979.]

CALIFORNIA DENTAL ASSOCIATION, Plaintiff and Respondent, v. AMERICAN DENTAL ASSOCIATION, Defendant and Appellant; CHARLES BLOCK, Real Party in Interest and Respondent.

348

**COUNSEL**

Peterson, Ross, Schloerb & Seidel, Peter M. Sfikas, Larry R. Eaton, Pat Chapin, Musick, Peeler & Garrett and James B. Bertero for Defendant and Appellant.

Miller & Mandel, S. Jerome Mandel, Jesse D. Miller and Peter H. Mason for Plaintiff and Respondent.

No appearance for Real Party in Interest and Respondent.

**OPINION**

**MOSK, J.**—In this case a private voluntary organization expelled one of its members for ethical misconduct, but the expulsion was subsequently

reversed by its parent body. The question presented is whether the constituent organization can obtain judicial review of the adjudicatory decision by its parent when the latter assertedly failed to comply with its own bylaws. ■ We conclude that when a private voluntary organization plainly contravenes the terms of its bylaws, the issues of whether and to what extent judicial relief will be available depend on balancing (1) the interest in protecting the aggrieved party's rights against (2) the infringement on the organization's autonomy and the burdens on the courts that will result from judicial attempts to settle such internal disputes. We further conclude that when the interest of the aggrieved constituent is its right to adopt and enforce higher ethical standards than those of the parent, it is appropriate for a trial court to direct the parent's adjudicatory body to consider the standards of the constituent, as required by the parent's bylaws, in deciding an appeal from the constituent.

The case arises out of an internecine dispute between the American Dental Association (ADA) and one of its constituent societies, the California Dental Association (CDA). To understand the procedural history leading to the controversy before us, it will be helpful to summarize the relationship between the parties.

The ADA is a nonprofit corporation with headquarters in Chicago and organized under the laws of Illinois; its purpose is to "encourage the improvement of the health of the public, to promote the art and science of dentistry and to represent the interests of the members of the dental profession and the public which it serves." The CDA is a constituent society of the ADA. Its name and territorial jurisdiction are set forth in the ADA charter, and its powers and duties as to membership, finances, and discipline are defined by ADA bylaws.

Professional conduct of ADA members is governed by its Principles of Ethics, in conjunction with the code of ethics of each member's constituent society. Discipline, which may include censure, suspension, or expulsion, must under ADA bylaws be preceded by written notice, a written decision with substantiating statement of facts, the verdict rendered, the penalty imposed, and notice of right of appeal. Appellate review is vested in the ADA Council on Judicial Procedures (Judicial Council), which has the responsibility of examining the hearing record, the written affidavit on appeal, and the briefs. The Judicial Council must determine whether the evidence supports the decision or warrants the punishment imposed, and must state the reasons for its conclusions in

writing. It can (1) dismiss the appeal for technical reasons, (2) affirm or reverse the decision, (3) refer the case back to the society for new proceedings if the member was denied his rights, or (4) uphold the decision and reduce the penalty. At all times relevant hereto, real party in interest Charles Block was a practicing dentist and a member of the ADA, the CDA, and the Tri-County Dental Society, a local component of the CDA.

The CDA's disciplinary body cited Block for 12 alleged violations of the CDA Code of Ethics and ADA Principles of Ethics. A hearing was held before a trial panel, and in a written decision the panel found Block guilty of eight of the twelve charges and expelled him from the CDA. Block's appeal to the ADA Judicial Council resulted in a reversal of seven of the eight charges and a reduction in the penalty imposed from expulsion to a two-year suspension. The CDA and Block each filed petitions for redetermination before the Judicial Council. These petitions were denied because the council concluded that no authorization for rehearing appeals was provided in the bylaws of the ADA.

Thereafter, the CDA filed a petition for writ of mandate in the Superior Court of Riverside County. Based on alleged substantive and procedural defects in the Judicial Council's appellate proceedings, the petition sought an order vacating the decision of the ADA and reinstating the CDA decision.[1] The trial court granted the CDA petition and ordered that (1) the ADA decision be vacated; (2) a new hearing on appeal before the Judicial Council be scheduled; and (3) upon such hearing, the Judicial Council specifically consider the charges and facts in light of the CDA Code of Ethics and more particularly its Advisory Opinions thereto.

I

The ADA contends that California courts do not have personal jurisdiction over it in the case before us. We disagree. Code of Civil Procedure section 410.50, subdivision (a), declares: "Except as otherwise provided by statute, the court in which an action is pending has jurisdiction over a party from the time summons is served on him as provided by Chapter 4 . . . . *A general appearance by a party is equivalent to personal service of summons on such party.*" (Italics added.) Thus,

---

[1]Block also filed a petition for writ of mandate seeking to vacate that portion of the ADA decision adverse to him. His petition trailed that of the CDA, and was dismissed without prejudice simultaneously with the trial court's decision in this case.

although a defendant may make a special appearance to challenge the jurisdiction of the court over his person (*Judson* v. *Superior Court* (1942) 21 Cal.2d 11, 13 [129 P.2d 361], overruled on other grounds in *Goodwine* v. *Superior Court* (1965) 63 Cal.2d 481, 484 [47 Cal.Rptr. 201, 407 P.2d 1]; *Jardine* v. *Superior Court* (1931) 213 Cal. 301 [2 P.2d 756, 79 A.L.R. 291]; *Lander* v. *Fleming* (1874) 47 Cal. 614), when he simultaneously answers to the merits he is no longer entitled to make this challenge. (*Cason* v. *Glass Bottle Blowers Assn.* (1951) 37 Cal.2d 134, 140 [231 P.2d 6, 21 A.L.R.2d 1387]; *Childs* v. *Lanterman* (1894) 103 Cal. 387 [37 P. 382]; *Ghiradelli* v. *Greene* (1880) 56 Cal. 629.) ■ It is well settled that "if a defendant wishes to insist upon the objection that he is not in court for want of jurisdiction over his person, he must specially appear for that purpose only, and must keep out for all purposes except to make that objection" (*Olcese* v. *Justice's Court* (1909) 156 Cal. 82, 87 [103 P. 317]); otherwise, he waives "any right [he] may have to insist that jurisdiction of [his] person had not been obtained." (*Remsberg* v. *Hackney Manufacturing Co.* (1917) 174 Cal. 799, 801 [164 P. 792].)

■ In the case before us, the ADA has not only raised jurisdictional challenges but has also defended against all of the CDA's claims on the merits. (See parts III and IV, *post.*) We therefore conclude that under these circumstances the exercise of jurisdiction over the ADA by California courts is appropriate.

## II

■ The ADA contends next that California courts lack subject matter jurisdiction to intercede in its internal procedures for review of CDA membership decisions. It insists that the CDA lacks standing to challenge the decision of its parent authority because only the person expelled, not the subordinate expelling body, possesses a judicially cognizable interest. The argument fails to distinguish two independent interests of the CDA implicit in its claim, the second of which qualifies the CDA as a "party beneficially interested" in the result (Code Civ. Proc., § 1086).

The first interest arises from the CDA's role as a subordinate body that has been overruled by a superior authority on appeal. With respect to this interest, the ADA correctly contends that the CDA cannot assert a claim based on cases in which we have applied common law principles of "fair procedure" to expulsion proceedings of private voluntary associations.

Our concern in such cases is with protecting persons seeking membership in, or expelled by, private organizations that occupy positions of special importance in society. (See, e.g., *Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541 [116 Cal.Rptr. 245, 526 P.2d 253]; *Pinsker* v. *Pacific Coast Soc. of Orthodontists* (1969) 1 Cal.3d 160 [81 Cal.Rptr. 623, 460 P.2d 495]; *James* v. *Marinship Corp.* (1944) 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900]; see generally Sloss & Becker, *The Organization Affected with a Public Interest and Its Members—Justice Tobriner's Contribution to Evolving Common Law Doctrine* (1977) 29 Hastings L.J. 99.)

The second is the CDA's interest in ensuring that the ADA comply with its own bylaws. The CDA asserts this concern not as a subordinate adjudicatory body that has been reversed on appeal, but as a representative of the aggregate interests of its members. Whether such an interest is judicially cognizable depends not on our cases applying principles of "fair procedure," but on the more general common law principles that govern disputes within private organizations.

As was recognized in *Dingwall* v. *Amalgamated Assn. etc.* (1906) 4 Cal.App. 565, 569 [88 P. 597], "the rights and duties of the members as between themselves and in their relation to [a private voluntary] association, in all matters affecting its internal government and the management of its affairs, are measured by the terms of [its] constitution and by-laws." (See also *Stoica* v. *International etc. Employees* (1947) 78 Cal.App.2d 533, 535-536 [178 P.2d 21].) In many disputes in which such rights and duties are at issue, however, the courts may decline to exercise jurisdiction. Their determination not to intervene reflects their judgment that the resulting burdens on the judiciary outweigh the interests of the parties at stake. One concern in such cases is that judicial attempts to construe ritual or obscure rules and laws of private organizations may lead the courts into what Professor Chafee called the "dismal swamp." (Chafee, *The Internal Affairs of Associations Not for Profit* (1930) 43 Harv.L.Rev. 993, 1023-1026.) Another is with preserving the autonomy of such organizations. (Note, *Developments in the Law—Judicial Control of Actions of Private Associations* (1963) 76 Harv.L.Rev. 983, 990-991.) We stated in *Pinsker* v. *Pacific Coast Society of Orthodontists, supra,* 12 Cal.3d at page 558, that "in adjudicating a challenge to the society's rule as arbitrary a court properly exercises only a limited role of review. As the Arizona Supreme Court observed in *Blende* v. *Maricopa County Medical Society* [1964] 96 Ariz. 240 [393 P.2d 926, 930]: 'In making such an

inquiry, the court must guard against unduly interfering with the Society's autonomy by substituting judicial judgment for that of the Society in an area where the competence of the court does not equal that of the Society . . . .' "

■    The courts will nevertheless accept jurisdiction over private voluntary organizations when the aggrieved party can demonstrate " 'an abuse of discretion, and a clear, unreasonable and arbitrary invasion of [its] private rights . . . .' " (*Lawson* v. *Hewell* (1897) 118 Cal. 613, 620 [50 P. 763].) Thus, we have refused to be bound by an association's unreasonable construction of a plain and unambiguous provision of its constitution requiring it to confer membership status on persons from affiliate unions. (*Mandracio* v. *Bartenders Union, Local 41* (1953) 41 Cal.2d 81 [256 P.2d 927].) Certainly, " '[a] clearly erroneous administrative construction of a definite and unambiguous provision of the constitution cannot operate to change its meaning.' " (*Gonzales* v. *Internat. Assn. of Machinists* (1956) 142 Cal.App.2d 207, 216-217 [298 P.2d 92].)

■    The initial question presented by the case at hand, therefore, is whether the ADA Judicial Council's refusal to consider the CDA's Code of Ethics and Advisory Opinions plainly contravenes the ADA's bylaws. If so, and if the burden on the courts and on the interest of the ADA in its autonomy do not outweigh the CDA's interests, it is appropriate for courts to exercise jurisdiction. Indeed, our courts have recognized the right of local labor unions to sue their parent unions to challenge the parent's application of its own constitutional bylaws. (See *Lawless* v. *Brotherhood of Painters* (1956) 143 Cal.App.2d 474 [300 P.2d 159]; *Killeen* v. *Hotel & R. Emp. etc. League* (1948) 84 Cal.App.2d 87 [190 P.2d 30].) After examining the record before us pursuant to the foregoing analysis, we conclude that the trial was correct in its ruling.

The ADA bylaws explicitly recognize that a constituent organization may adopt and enforce its own ethical standards. They provide, "The *Principles of Ethics* of this Association and the code of ethics adopted by the constituent society shall be the code of ethics of that constituent society for governing the professional conduct of its members." (ADA Bylaws, ch. II, § 80.) They also empower a constituent organization to discipline those members whom the constituent finds to have violated its

own code of ethics or the Principles of Ethics of the ADA.[2] Either the disciplined member or the constituent society itself may appeal the decision to the Judicial Council. (*Id.,* ch. XI, § 20, subd. D.) On appeal, the Judicial Council is "required to review the decision appealed from to determine whether the evidence before the society which preferred charges against the accused member supports that decision or warrants the penalty imposed." (*Id.,* ch. XI, § 20, subd. D(e).)

The trial court exercised its jurisdiction to protect the CDA's interest in preserving its authority, *as recognized by ADA bylaws,* to promulgate higher ethical standards than those of the ADA and to have those standards considered by the Judicial Council on appeal.[3] The court found that the Judicial Council failed to comply with ADA bylaws by not considering the CDA's Code of Ethics and Advisory Opinions thereto. The court therefore directed the Judicial Council to reconsider the appeal in light of the CDA's Code of Ethics and Advisory Opinions. It left the council free to weigh the evidence and determine pursuant to ADA Bylaws, chapter XI, section 20, subdivision D(e), whether the evidence "supports [the trial panel's] decision or warrants the penalty imposed." Thus, in protecting CDA's interest in maintaining high ethical standards, the court was not unduly burdened in interpreting the rules and laws of the ADA, nor did its remedy seriously impair any interest of either the ADA or CDA in autonomy. The court therefore properly weighed the competing considerations and concluded that a judicial remedy was appropriate.

## III

The ADA also contends that the Judicial Council's decision on Block's appeal was not contrary to the manifest weight of the evidence. Even if this contention were correct, however, we cannot uphold the

[2]The ADA bylaws state that the constituent society "shall have the power to discipline any of its members subject to the provisions in Chapter XI, Section 20 of these *Bylaws.*" (ADA Bylaws, ch. II, § 30, subd. D.) The latter declare, inter alia, that "A member may be disciplined by his component or constituent society for (1) having been found guilty of a felony, (2) having been found guilty of violating the dental practice act of a state, District of Columbia, territory, dependency or country, or (3) violating the *Bylaws,* the *Principles of Ethics,* the codes of ethics of the constituent or component societies . . . ." (*Id.,* ch. XI, § 20, subd. A.)

[3]The case is thus not one in which the ADA and CDA are engaged in a dispute concerning the *interpretation* of the ADA bylaws. If it were, the interests of the ADA in autonomy and the burdens on the courts that might result from attempting to resolve such disputes would be strong considerations militating against judicial review.

council's decision if it did not evaluate the evidence according to the appropriate standards; and we will conclude it did not do so because of its failure to decide Block's appeal in light of the CDA's higher ethical principles.

As discussed above, the ADA bylaws grant the CDA the right to adopt and enforce higher ethical standards than the ADA. The CDA's Code of Ethics and Advisory Opinions reflect its decision to exercise this right; but, as the trial court found, the Judicial Council failed to consider the higher standards of the CDA in deciding Block's appeal. In reviewing this finding, we are governed by the familiar substantial evidence test of *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].

The Judicial Council's decision, in reversing seven of the eight findings of the CDA that Block had violated the ethical standards of both the CDA and ADA, addressed only the issues of whether Block had violated the ADA's Principles of Ethics. But the ethical standards of the CDA, as articulated in the CDA's Code of Ethics and Advisory Opinions, are more stringent than those of the ADA.[4] The Judicial Council's decision itself therefore supports the trial court's finding. Moreover, other evidence and affidavits were admitted from which the trial court could reasonably infer that the council did not consider the CDA standards.[5] We hold that substantial evidence was presented from which the trial court could reasonably find that the council considered only the ADA Principles of Ethics.

[4]Although the ADA claims that the CDA's and the ADA's codes of ethics are virtually identical, this claim is supportable only if the CDA's code is construed without reference to its Advisory Opinions. Such a construction, however, would contravene CDA's decision in promulgating its Advisory Opinions to adopt higher ethical standards than the ADA—a decision that it is entitled to make under the bylaws of the ADA.

[5]The ADA argues that because members of the Judicial Council, subsequent to rendering their written decision, stated that several of the CDA's Advisory Opinions could not be violations of the section of the code of ethics to which they referred, we must infer that the council considered these opinions. We conclude, however, that the trial court could reasonably adopt a contrary inference—i.e., that these statements show the council treated the CDA standards as identical to those of the ADA, rather than applying the CDA's more stringent interpretation of its own standards as articulated in its Advisory Opinions. Moreover, in further support of the inference, the ADA's written decision stated that the ADA Principles of Ethics and the CDA's Code of Ethics were "virtually identical."

## IV

The ADA contends that under *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162], we should direct the trial court to decide the merits of Block's appeal to the Judicial Council. In *Anton,* we held that when a licensed physician was denied renewal of his hospital rights and privileges after he had been a member of the hospital staff for the preceding 13 years, the trial court should "exercise its independent judgment on the evidence presented before the [hospital] administrative body in order to determine whether the findings offered in support of the decision were supported by the weight of the evidence." (*Id.,* at p. 825.) We did not hold that the court was barred from requiring a private organization to comply with proper decision-making procedures before it reviewed the merits of the organization's decision and exercised its independent judgment. Moreover, the holding in *Anton* was based on our application of common law principles of fair procedure to the physician's exclusion from the hospital staff, and on our conclusion that the physician's right to staff privileges was both fundamental and vested under *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242], and *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]. The physician was the aggrieved party before the courts.

Protection of the CDA's interests, by contrast, does not require the application of common law principles of fair procedure. It requires only that the Judicial Council consider the CDA's Code of Ethics and Advisory Opinions, as mandated by ADA bylaws, in deciding Block's appeal. Indeed, this is the remedy the trial court ordered and that the CDA requests be affirmed. We conclude, therefore, that *Anton* does not require the trial court to evaluate the merits of Block's expulsion.

The ADA also contends that the trial court erred in requiring it to reconsider charges VII and VIII because under *Jacoby* v. *State Bar* (1977) 19 Cal.3d 359 [138 Cal.Rptr. 77, 562 P.2d 1326], and *Bates* v. *State Bar of Arizona* (1977) 433 U.S. 350 [53 L.Ed.2d 810, 97 S.Ct. 2691], it was compelled to reverse the CDA on these charges. We need not decide this question on the facts before us. Although the trial court's order directs the Judicial Council to reconsider these charges in light of the CDA's Code of Ethics and Advisory Opinions, it does not require the council to ignore *Jacoby* and *Bates* in reaching its decision.

The judgment is affirmed.

Tobriner, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.

**BIRD, C. J.**—I respectfully dissent.

The rule announced today will greatly increase the workload of our already overburdened courts. Internal disputes between private voluntary associations involving their respective bylaws are best left outside the purview of our courts. In extending jurisdiction to these cases, this court misreads the case law and ignores the flood of litigation it is inviting.

The majority rely on decisions which lend little support to an exercise of jurisdiction here. All of the cases cited involve *individuals* suing organizations which have charged the individuals with misconduct or denied them some privilege. For example, in *Lawless* v. *Brotherhood of Painters* (1956) 143 Cal.App.2d 474 [300 P.2d 159], a local union officer, whom the parent union had charged with subversive activity, sued the parent for inducing a breach of contract and default on a debt. In *Gonzales* v. *Internat. Assn. of Machinists* (1956) 142 Cal.App.2d 207 [298 P.2d 92], an individual regained membership in a union which had expelled him for allegedly maligning an officer of the union. In *Mandracio* v. *Bartenders Union, Local 41* (1953) 41 Cal.2d 81 [256 P.2d 927], an individual successfully sued a union for membership which had been improperly denied him. (See also *Lawson* v. *Hewell* (1897) 118 Cal. 613 [50 P. 763] [individual member sued to enjoin organization from trying him on charges of conduct unbecoming a Mason]; *Killeen* v. *Hotel & R. Emp. etc. League* (1948) 84 Cal.App.2d 87 [190 P.2d 30] [local members sued union which had charged them with conduct detrimental to union's welfare]; *Stoica* v. *International etc. Employees* (1947) 78 Cal.App.2d 533 [178 P.2d 21] [members of local sued parent union which had disciplined them for violating orders]; *Dingwall* v. *Amalgamated Assn. etc.* (1906) 4 Cal.App. 565 [88 P. 597] [individual sued union which had expelled him for conspiring against welfare of the union].) Thus, the majority cite no case which holds that our courts should exercise jurisdiction in intraorganizational disputes which do not involve an infringement of an individual's rights.

When an intraorganizational dispute does not cause injury to an individual, there is no compelling reason for taking our courts' time and

energies away from more pressing matters. The majority minimize the burden on trial courts of determining whether an organization has complied with its own rules. To resolve that issue, the court may be confronted with a substantial amount of testimony and documentary evidence.

As the present case illustrates, the trial court's decision may not end the inquiry. The losing organization at the trial level has a right to appeal. Further, even a full round of appellate litigation may not end the courts' involvement. In this case, if the parent body now reaffirms its original decision after stating that it has considered the California Dental Association's (CDA) ethical standards, CDA is likely to return to superior court to complain that the parent body did not substantially comply with the court's order. Isn't the court required to resolve this claim? If so, a second round of litigation may begin. While we do not begrudge aggrieved individuals such continuing access to the courts, our limited resources should not be spent on these internal disputes.

The resolution of such disputes is better left to the private organizations themselves. In the present case, if CDA believes that its parent, the American Dental Association (ADA), is not complying with its own bylaws, CDA can alert other constituent members to the breach and seek compliance. If this effort is unsuccessful, and if CDA insists on maintaining standards different than those enforced by ADA, then CDA should reevaluate its affiliation with the parent body. In the long run, a policy of judicial restraint will better serve these private associations with their need for autonomy, and our judicial system with its limited resources and manpower.