[No. A041236. First Dist., Div. Three. Feb. 17, 1989.]

IAN BERKE, Plaintiff and Respondent, v.
TRI REALTORS, Defendant and Appellant;
SAN FRANCISCO BOARD OF REALTORS, Objector and
Respondent.

**COUNSEL**

Harry Pollack, Neil Eisenberg, Stephen R. Leopold and Eisenberg & Pollack for Defendant and Appellant.

Thellen Levy and Seifer, Murken, Levy & Despina for Plaintiff and Respondent.

James H. Thompson, Jr., Gary A. Gavello and Hassard, Bonnington, Rogers & Huber for Objector and Respondent.

William M. Pfeiffer, June Babiracki Barlow and Judith K. Herzberg as Amici Curiae on behalf of Objector and Respondent.

**OPINION**

**BARRY-DEAL, J.**—TRI Realtors, The Realty Investment Company (TRI), appeals from an order denying its petition to compel the arbitration of its disputes with Ian Berke, individually and doing business as Ian Berke Real Estate (Berke), by the San Francisco Board of Realtors (Board of Realtors). TRI claims that the trial court erred in refusing to compel the Board of Realtors to arbitrate TRI's disputes with Berke. We affirm.

*Factual and Procedural Background*

TRI was the listing real estate broker for Nan and Kenneth Hecht, Jr., for the sale of their real property located in San Francisco. Berke, also a real estate broker, showed the property to Robert and Ann Martensen in March 1986. The Martensens made an offer on the property which was rejected. Shortly thereafter, the Martensens discharged Berke as their agent.

Five months later, in August 1986, the Martensens and the Hechts executed a written contract for the sale of the property to the Martensens. The

sale was completed the following month. Berke received no commission on the sale.

TRI and Berke were both members of the Board of Realtors. As members, they agreed to submit disputes with other members to the board for arbitration. Thus, Berke petitioned the Board of Realtors to arbitrate the dispute between himself and TRI, alleging that he was owed $25,755, which represented a 3 percent commission on the Hecht-Martensen sale.

The chairperson of the Board of Realtors' professional standards panel recommended that the TRI-Berke controversy not be arbitrated because of the magnitude of the amount involved. This recommendation was adopted by the Board of Realtors at a regularly scheduled directors' meeting.

Subsequently, TRI requested that the Board of Realtors reconsider its decision. The board granted TRI's request, and, after hearing TRI's position at a second directors' meeting, reversed its decision.

Berke then requested that he too be given the opportunity to present his position. Arrangements were made for a third, de novo hearing. At the conclusion of the de novo hearing, the directors found that the dispute was not arbitrable by the Board of Realtors because it was legally too complex. Thus, the board rejected Berke's original petition.

Berke then filed a complaint in the San Francisco Superior Court against TRI, its sales agents, the Hechts, and the Martensens. The complaint sets forth causes of action for breach of contract, intentional and negligent interference with prospective economic advantage, fraud, and conspiracy. TRI answered the complaint and filed a petition to compel the Board of Realtors to arbitrate the dispute between TRI and Berke. The court denied the petition, and TRI filed a timely appeal. The trial court then stayed action on the complaint pending the outcome of this appeal.

*Discussion*

The principal issue on this appeal is whether and to what extent the Board of Realtors had the power to decline to arbitrate the TRI-Berke dispute.

■■■ The rights and duties of members of a private voluntary association, between themselves and in their relation to the association, are measured by the terms of the association's constitution and bylaws. (*California Dental Assn.* v. *American Dental Assn.* (1979) 23 Cal.3d 346, 353 [152 Cal.Rptr. 546, 590 P.2d 401].) However, in many disputes in which a

party's rights and duties in relation to an organization are at issue, the courts may decline to exercise jurisdiction. "Their determination not to intervene reflects their judgment that the resulting burdens on the judiciary outweigh the interests of the parties at stake. One concern in such cases is that judicial attempts to construe ritual or obscure rules and laws of private organizations may lead the courts into what Professor Chafee called the 'dismal swamp.' (Chafee, *The Internal Affairs of Associations Not for Profit* (1930) 43 Harv.L.Rev. 993, 1023-1026.) Another is with preserving the autonomy of such organizations. (Note, *Developments in the Law —Judicial Control of Actions of Private Associations* (1963) 76 Harv.L.Rev. 983, 990-991.)" (*California Dental Assn.* v. *American Dental Assn., supra,* 23 Cal.3d at p. 353.)

■ The courts will, nevertheless, accept jurisdiction over private voluntary organizations when the aggrieved party can demonstrate an abuse of discretion and a clear, unreasonable, and arbitrary invasion of his or her private rights. (*California Dental Assn.* v. *American Dental Assn., supra,* 23 Cal.3d at p. 354.) "[W]hen a private voluntary organization plainly contravenes the terms of its bylaws, the issues of whether and to what extent judicial relief will be available depend on balancing (1) the interest in protecting the aggrieved party's rights against (2) the infringement on the organization's autonomy and the burdens on the courts that will result from judicial attempts to settle such internal disputes." (*Id.,* at p. 350.)

However, the balancing test noted above only comes into play if the organization's challenged action " 'plainly contravenes' " its bylaws. (*California Trial Lawyers Assn.* v. *Superior Court* (1986) 187 Cal.App.3d 575, 580 [231 Cal.Rptr. 725]; see also *California Dental Assn.* v. *American Dental Assn., supra,* 23 Cal.3d at p. 354.) ■ Thus, the initial question before this court is whether the Board of Realtors plainly contravened its bylaws when it refused to arbitrate the TRI-Berke dispute because it was legally too complex.

The Board of Realtors' Code of Ethics and Arbitration Manual (Arbitration Manual) is incorporated into, and made a part of, the organization's bylaws. In support of its petition to compel arbitration in the superior court, TRI submitted a copy of the board's Arbitration Manual and several other extrinsic documents. Berke and the Board of Realtors offered no conflicting extrinsic evidence in support of their claim that arbitration was not required. ■ Since there is no conflicting extrinsic evidence, on appeal, we must make an independent determination of the meaning of the Arbitration Manual and whether or not the board plainly contravened it when it refused to arbitrate the TRI-Berke dispute because of its complexity. (See *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767,

402 P.2d 839]; see also 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 295, p. 306.)

Section 25 of the Arbitration Manual provides: "By becoming and remaining an Active member and by signing or having signed the agreement to abide by the Bylaws, every Active member binds himself [or herself] and agrees to submit to arbitration by the Board's facilities all disputes with any other Active member, if either party to the dispute should so request and *if the Board is willing to arbitrate the matter.* This shall be deemed an arbitration agreement within the meaning of Part 3, Title 9 of the California Code of Civil Procedure." (Italics added.)

Section 26 of the Arbitration Manual further defines the Board's arbitration obligations. It provides: "If either the Chairperson of the Professional Standards Panel, in conjunction with the Secretary, or the Arbitration Panel selected in the manner hereinafter provided determine that because of the magnitude of the amount involved or the legal complexity of the controversy the dispute should not be arbitrated, they shall so report to the Board of Directors and if the Board of Directors concurs, the arbitration shall terminate and the parties shall be relieved of their obligation to arbitrate the controversy. In this event, any deposit made by the parties shall be returned to the parties."

■■■ In the present case, the Board of Realtors' procedural actions complied exactly with the controlling language of the Arbitration Manual. Further, ample evidence supports the board's conclusion that the TRI-Berke dispute was legally complex.

The petition to arbitrate submitted by Berke to the Board of Realtors refers to the alleged bad faith of TRI, which failed to inform Berke that his clients were continuing to negotiate a purchase with TRI's clients. It asserts that the conduct of TRI's clients constituted " 'intentional interference with prospective economic advantage,' " and refers to a "strong appearance of a conspiracy among the buyer, seller, and TRI . . . ." It also alleges that there is a "substantial question of fraud." While these legal concepts may not be complex to members of the bar and the courts who deal with them on a continuing basis, they could prove difficult for members of the real estate community unfamiliar with the principles involved.

Further, the procedural history of the underlying litigation in the superior court emphasizes the complexity of the TRI-Berke dispute. On March 25, 1988, the superior court held, on its own motion, that the case was inappropriate for judicial arbitration because of its complexity. While the action before the superior court included parties not involved in the TRI-

Berke petition to arbitrate (the Hechts, Martensens, and the sales agents involved in the sale), this is a factor pointing to the complexity of the TRI-Berke dispute.

TRI argues that the Board of Realtors was required to arbitrate its dispute with Berke because the dispute was "plainly" covered by the Arbitration Manual. However, in making this argument, TRI misperceives the function of this court in reviewing the actions of the board. ▮ Courts must guard against unduly interfering with an organization's autonomy by substituting judicial judgment for that of the organization in an area where the competence of the court does not equal that of the organization. (*California Dental Assn.* v. *American Dental Assn., supra,* 23 Cal.3d at pp. 353-354.) ▮ The practical and reasonable construction of the constitution and bylaws of a voluntary organization by its governing body is binding on the membership and will be recognized by the courts. (*Williams* v. *Inglewood Board of Realtors* (1963) 219 Cal.App.2d 479, 486 [33 Cal.Rptr. 289].) ▮ Here, our review is limited solely to whether the board's action in declining to arbitrate the TRI-Berke dispute plainly contravened its bylaws. Clearly it did not.

TRI raises several arguments in support of its claim that its dispute with Berke must be arbitrated by the Board of Realtors. First, it argues that the board could not refuse to arbitrate its "commission dispute" with Berke simply because other causes of action were joined with it. This argument fails on three grounds. First, as is noted above, Berke's petition to the Board of Realtors was not framed as a mere "commission dispute." It alleges questions of fraud, bad faith, and interference with prospective economic advantage. Second, TRI has presented no evidence to support its conclusion that the Board of Realtors refused to arbitrate the dispute simply because other causes of action were joined with it. Third, even if the board's decision not to arbitrate was based on the presence of causes of action in addition to the "commission dispute," we would not substitute our judgment for that of the board in determining what disputes to arbitrate. (See *California Dental Assn.* v. *American Dental Assn., supra,* 23 Cal.3d at pp. 353-354.)

Next, TRI argues that there is nothing in the Arbitration Manual which expressly excludes its dispute with Berke from arbitration. Although TRI acknowledges the language of section 26 of the Arbitration Manual, it argues that exclusionary clauses must be narrowly construed. TRI also points to this state's strong policy in favor of arbitration. However, in making these arguments, TRI misperceives its relationship with the Board of Realtors. There is no "arbitration agreement" between TRI and the board. Their relationship is contractual and is limited by the terms of the Arbitration Manual. By becoming a member of the board, TRI agreed to

submit its disputes with other members to arbitration. The board, on its part, agreed to arbitrate disputes between members, subject to its right to refuse to arbitrate when the disputes are legally too complex. The policies in favor of arbitration and the narrow reading of exclusionary clauses are inapplicable to the present dispute.

Finally, TRI argues that the Board of Realtors' interpretation of the Arbitration Manual would give it "unbridled discretion" to refuse to arbitrate commission disputes. Citing several maxims of jurisprudence, it argues that the board's interpretation of the Arbitration Manual would render the board's agreement to arbitrate disputes between members illusory. However, the Board of Realtors does not have unbridled discretion to refuse to arbitrate disputes submitted by its members. Before a petition for arbitration is rejected, the chairperson of the board's professional standards panel, in conjunction with the secretary, or the arbitration panel selected must determine that, because of the amount involved or the legal complexity of the controversy, the dispute should not be arbitrated. This decision then must be adopted by the directors of the Board of Realtors. Thus, the board is required to follow specific, detailed procedures before declining to arbitrate a controversy. Its obligations are not illusory.

The order denying TRI's petition to arbitrate is affirmed. Respondent Board of Realtors' request for sanctions for filing a frivolous appeal is denied.

White, P. J., and Strankman, J., concurred.