Filed 3/5/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| HEE SHEN CEMETERY AND BENEVOLENT ASSOCIATION,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>YEONG WO ASSOCIATION et al.,<br><br>    Defendants and Appellants. | A165514<br><br>(San Francisco County<br>Super. Ct. No. CGC-21-592116) |

Under California law, courts intervene only sparingly in disputes involving how private associations choose to govern themselves. (*California Dental Assn. v. American Dental Assn.* (1979) 23 Cal.3d 346, 353 (*California Dental*).) Here, Hee Shen Cemetery and Benevolent Association (Hee Shen) asked the trial court to intervene in a disputed election for the leadership of Yeong Wo Association (Yeong Wo), of which Hee Shen is one of 12 member organizations. Hee Shen convinced the trial court to void Yeong Wo's presidential election for its 2021-2022 term and order a new election for a full two-year term. The trial court found that Yeong Wo's bylaws were clear and unambiguous, and that the bylaws restricted the candidates for Yeong Wo's presidential elections in a manner advocated by Hee Shen.

We conclude that the trial court's finding was not supported by substantial evidence and that the remedy it ordered was inappropriate as a matter of law. The trial court misapplied *California Dental*, which mandates a two-part framework for courts to determine whether they should wade into

1

the " 'dismal swamp' " of disputes within a private voluntary association regarding its own bylaws. (*California Dental*, *supra*, 23 Cal.3d at p. 353.) Judicial intervention is appropriate only if an association has abused its discretion by unreasonably construing a plain and unambiguous provision of its bylaws. (*Id.* at p. 354.) If an association has done so, then the extent to which judicial relief is available depends on balancing the interests of the aggrieved party against the burden on the courts and infringement on the association's autonomy. (*Ibid.*) The trial court should not have intervened. The court also lacked substantial evidence to order a new presidential election for a new term. We therefore reverse the judgment.

## FACTUAL BACKGROUND

### A. *Yeong Wo and its Bylaws*

Yeong Wo is a private cultural and charitable association that serves as an umbrella group for 12 constituent organizations, called "tangs." The president of Yeong Wo serves a two-year term and is elected among candidates from one of the tangs; the specific nominating tang is determined on a rotating basis. Hee Shen is one of Yeong Wo's 12 tangs. Hee Shen supports traditional Chinese burial sites. Anyone who is a descendant of someone from China's Huang Ling Dao District may become a member of Hee Shen.

Yeong Wo's bylaws are written in Chinese. Hee Shen submitted an English translation of the bylaws to the court, which the court admitted into evidence at trial. The translation of the provision relating to the election of Yeong Wo's president reads, in relevant part:

2

"[T]he positions of Chairperson[1] and Secretary shall be elected in rotating order from each of the Benevolent Society (aka: Association). If a certain Benevolent Society (aka: Association) is next in turn to elect member(s) as candidate(s), the current Chairperson shall openly notify said Benevolent Society (aka: Association) next in turn by mid-September, that it must openly recruit qualified candidates and conduct selection of its candidates in a fair and equitable manner by providing written recommendations of two or more nominees for each of the positions. . . . And, list out [the nominee(s)]'s resume(s) in a report, so that the Yeong Wo Benevolent Association may call upon a board meeting and vote by the entire body of the attending Board Members, elect one person each for respective position(s) to fill the post(s). The nominee who has the most votes shall be elected."

The operation of these provisions in the election for president of Yeong Wo in the 2021-2022 term became the basis for the underlying lawsuit.

### B. *Hee Shen and its Recommended Candidates*

In September 2020, Yeong Wo notified Hee Shen of its turn in the rotation among the 12 tangs to have a member serve as Yeong Wo's president for the 2021-2022 term. Pursuant to the tang's own bylaws, Hee Shen published a notice in Chinese newspapers of an "open[] call for capable candidates for the office." Hee Shen received four applications, including one from Kwok Yin Leung. Leung had been a member of Hee Shen for approximately 35 years and served as its vice chairman, vice director, and treasurer.

---

[1] We refer to this position as "president" for consistency with the terminology used by the parties and trial court. The interpreter at trial clarified that the Chinese term is "literally translated as chairperson," but "can also be known as the president."

3

At an October 5, 2020 meeting, Hee Shen's board voted in favor of recommending only two candidates instead of all four applicants. Hee Shen's board held a vote among the four candidates, with two other members (not Leung) receiving the highest number of votes. According to testimony from a Hee Shen board director, the board used this process "to make sure we are going to recommend the strongest candidate." Another Hee Shen director testified that nothing disqualified Leung from being president, and the board just wanted to employ a process that would allow it to propose the two "best" candidates.

Hee Shen notified Yeong Wo that the two members who received the most votes in the Hee Shen board's election were the "recommended presidential candidates." Hee Shen also stated that anyone "self-recommended to run for the office without authorization in Yeong Wo Benevolent Association would not be qualified to run in the election, and the vote should be void."

After the Hee Shen board failed to pick him as a recommended candidate, Leung submitted his application directly to Yeong Wo. He complained that Hee Shen's vote to only recommend two candidates was unfair.

Yeong Wo formed an election evaluation committee. A committee member, who was also Yeong Wo's president at the time, testified that, based on Yeong Wo's bylaws, the committee reviewed the applications and determined that all four applicants should be allowed to run for president.

### C. *Vote for the 2021-2022 Term Yeong Wo President*

At an April 18, 2021 meeting, Yeong Wo's board announced the recommendation by its election evaluation committee. Members of Hee Shen unsuccessfully tried to disrupt the voting process. A majority of the Yeong

4

Wo board voted to confirm that all four candidates were eligible to participate in the election.

At a May 16, 2021 meeting, Yeong Wo's board voted for its president for the 2021-2022 term. According to the meeting minutes, members of Hee Shen blocked entrance into the meeting and police arrived to maintain order. Yeong Wo directors used chairs to block Hee Shen members while ballots were counted. Leung received the highest number of votes and became Yeong Wo's 2021-2022 term president.

## PROCEDURAL BACKGROUND

### A. *This Action*

In June 2021, Hee Shen filed this action seeking declaratory and injunctive relief against Yeong Wo and Leung (then acting as Yeong Wo's president). Hee Shen specifically sought a declaration and injunction that (1) the resolution after the election confirming Leung as president for the 2021-2022 term be deemed invalid; and (2) Leung "should not (acting on behalf of Plaintiff) conduct business affairs of Yeong Wo as [its] President for 2021 and 2022."

### B. *Denial of Preliminary Injunction*

Hee Shen moved for a preliminary injunction in July 2021. Yeong Wo opposed the motion, arguing that the court should refrain from intervening in this dispute because Yeong Wo did not plainly contravene its bylaws. It interpreted the bylaws as providing that Hee Shen may make recommendations on candidates for president, but Yeong Wo's board has the ultimate power to choose its own president. In Yeong Wo's view, its bylaws did not mandate that the election be limited exclusively to only Hee Shen's recommended candidates.

The trial court denied the preliminary injunction. It concluded that

5

Hee Shen had failed to show Yeong Wo plainly contravened its bylaws and, relying on *California Dental*, that "the policy of judicial restraint therefore controls the instant motion." The court explained that even if Hee Shen's interpretation was "more plausible," the bylaws "*ambiguously* state" that Hee Shen may make "recommendations," but Yeong Wo may choose its president.

Hee Shen moved for reconsideration of the order. It argued that the original translation attached to its complaint misinterpreted a phrase in the Yeong Wo bylaws. The original translation read that Yeong Wo could "select from" the entire body of attendees of its board meeting to elect the president. The revised translation replaced the phrase "select from" with the phrase "vote by." The trial court denied the motion for reconsideration. It reasoned in part that even the updated translation "still does not clearly provide that [Yeong Wo] was obligated to choose a President from [Hee Shen's] slate of nominees."

### C. *Judgment*

The trial court subsequently held a bench trial before a different judge. On May 11, 2022, the court issued a statement of decision and judgment. It characterized the dispute as a "very simple" one: whether or not defendant Yeong Wo violated its own bylaws by not voting upon "whoever was successfully nominated by [Hee Shen] as a candidate" for president of Yeong Wo. The trial court first found that Yeong Wo's bylaws were "clear and unambiguous." It then found that Yeong Wo had violated its bylaws by "choosing to add additional candidates to the voting list that were not recommended/approved by [Hee Shen]."

The court further found that "the interest of [Yeong Wo] regarding the election does not outweigh the aggrieved interests of [Hee Shen], and therefore exercises its jurisdiction on this matter." It stated: "When a court

6

finds that an election violated the corporate bylaws, the court will properly find that the officers/directors elected thereafter were not entitled to hold office and that . . . the election is void and order a new meeting for the purpose of electing officers/directors."

The trial court entered judgment that "(1) Defendant Yeong Wo violated its bylaws; (2) the election of the Yeong Wo President for the 2021-2022 term violated Defendant Yeong Wo's bylaws and was improper and therefore void; (3) Defendant Kwok Yin Leung is not entitled to hold office and is removed as President of Yeong Wo; and (4) an immediate new election for Yeong Wo President for the full two-year term is to be held and [Hee Shen's] approved nominees be voted on by the Yeong Wo Board of Directors as required under Article XXI of Defendant Yeong Wo's bylaws."

Yeong Wo appealed.

## DISCUSSION

Yeong Wo argues that the trial court erred in reaching its conclusions concerning both steps of the *California Dental* framework, by finding that (1) Yeong Wo had abused its discretion by unreasonably construing a plain and unambiguous provision of its bylaws, and (2) the balancing of interests warranted a new election with Hee Shen's approved nominees for a full two-year term. We agree.

The *California Dental* framework reflects "general common law principles that govern disputes within private organizations." (*California Dental, supra*, 23 Cal.3d at p. 353.) "[B]y-laws of a voluntary unincorporated association constitute a contract between the association and its members, and the rights and duties of the members as between themselves and in their relation to association, in all matters affecting its internal government and the management of its affairs, are measured by the terms of [its] constitution

7

and by-laws." (*Dingwall v. Amalgamated Assn. of Street Railway Employees* (1906) 4 Cal.App. 565, 569; *California Dental*, at p. 353 [quoting excerpt of same].) Accordingly, courts " 'properly exercise[] only a limited role of review' " in challenges to the association's interpretation of its own rules. (*California Dental*, at p. 353, quoting *Pinsker v. Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 558.)

The courts play only a very limited role in adjudicating disputes concerning the affairs of private clubs and associations. "In many disputes in which such rights and duties are at issue . . . the courts may decline to exercise jurisdiction. Their determination not to intervene reflects their judgment that the resulting burdens on the judiciary outweigh the interests of the parties at stake. One concern in such cases is that judicial attempts to construe ritual or obscure rules and laws of private organizations may lead the courts into what Professor Chafee called the 'dismal swamp.' " (*California Dental, supra,* 23 Cal.3d at p. 353, quoting Chafee, *The Internal Affairs of Associations Not for Profit* (1930) 43 Harv. L.Rev. 993, 1023–1026.) Our Supreme Court highlighted another concern: "preserving the autonomy of such organizations." (*Ibid.*, citing Note, *Developments in the Law— Judicial Control of Actions of Private Associations* (1963) 76 Harv. L.Rev. 983, 990–991.) It observed that courts "must guard against unduly interfering" in a private association's "autonomy by substituting judicial judgment for that of the [association] in an area where the competence of the court does not equal that of the" association. (*California Dental*, at p. 354.)

The standard for any court intervention in cases concerning a private association's affairs is therefore quite high. Courts will accept jurisdiction over a private voluntary association only where the association abused its discretion by unreasonably construing a plain and unambiguous provision of

its bylaws. (*California Dental*, *supra*, 23 Cal.3d at p. 353.) We review the trial court's finding on this threshold question for substantial evidence. (*Id.* at p. 356.)

Here, the trial court decided the Yeong Wo bylaws were "clear and unambiguous" based on the revised translation of the bylaws alone. Based on our review, however, the trial court's construction of the bylaws does not follow from the text. In our reading, the translation provides that the nominating tang could "recruit qualified candidates" and "conduct selection of its candidates in a fair and equitable manner by providing written recommendations of two or more nominees for each of the positions." The trial court's earlier orders denying Hee Shen's motion for preliminary injunction and then denying reconsideration, finding the revised translation of the bylaws ambiguous, should have raised red flags in any analysis suggesting the relevant bylaw was clear and unambiguous. The language requiring the nominating tang to make "recommendations" of two or more nominees for Yeong Wo president was unchanged in the proffered translations between the preliminary injunction and the trial.

Hee Shen relies on dictionary definitions of the term "recommend"—"to present as worthy of acceptance or trial" or "to endorse as fit, worthy, or competent"—to argue that the trial court properly interpreted the bylaws to preclude Yeong Wo from having *any* power to select additional nominees. It would be entirely reasonable, however, to interpret this provision to mean that the nominating tang *recommends*, but does not mandate, nominees for Yeong Wo's president. (See, e.g., *Association of Irritated Residents v. County of Madera* (2003) 107 Cal.App.4th 1383, 1396 [provision setting out additional recommended studies that might be helpful "does not mean that they are required"].)

9

The bylaws also provide that, after receiving the tang's nominees, Yeong Wo may vote to elect "one person" for the position of president. It does not state that Yeong Wo must elect one of the tang's recommended candidates. Accordingly, it would be reasonable to interpret this provision to mean that Yeong Wo is not limited to only the tang's recommended candidates, but any qualified applicant from the tang. Alternatively, the provision could be read more broadly to mean that Yeong Wo could elect any member of the tang.

At a minimum, the Yeong Wo bylaws are not a vision of clarity. " 'An ambiguity exists when a party can identify an alternative, semantically reasonable, candidate of meaning of a writing.' " (*Benedek v. PLC Santa Monica* (2002) 104 Cal.App.4th 1351, 1357.) The bylaws were ambiguous at best as to whether Yeong Wo was obligated to elect a president from Hee Shen's recommended candidates, from among Hee Shen qualified applicants, or from a larger pool of Hee Shen members. Hee Shen and Yeong Wo offered competing interpretations of an ambiguous bylaw provision. We conclude that the interpretation advanced by Yeong Wo does not "plainly contravene" its bylaws. (*California Dental*, *supra*, 23 Cal.3d at p. 354.)

*California Dental* and *California Trial Lawyers Association v. Superior Court* (1986) 187 Cal.App.3d 575 (*California Trial Lawyers*), another leading case concerning judicial intervention in the disputes of a voluntary association, provide helpful points of comparison. In *California Dental*, the California Dental Association (CDA) expelled one of its dentists after finding him guilty of violations of the codes of ethics of both the CDA and its parent organization, the American Dental Association (ADA). (*California Dental*, *supra*, 23 Cal.3d at p. 351.) The dentist appealed to the ADA, which reversed most of the charges and reduced the penalty to a suspension. (*Ibid.*) The

trial court granted CDA's petition for writ of mandate seeking to vacate the ADA decision and directing it to consider the charges and facts in light of the CDA's code of ethics. (*Ibid.*)

Our Supreme Court concluded that the ADA's refusal to consider the CDA's code of ethics plainly contravened the ADA bylaws, which provided that " 'the code of ethics adopted by the constituent society shall be the code of ethics of that constituent society for governing the professional conduct of its members' " and empowered a constituent society to discipline members for violations of its own code of ethics. (*California Dental*, *supra*, 23 Cal.3d at p. 354.) Here, unlike *California Dental*, there is no provision that unambiguously restricted Yeong Wo from adding candidates not recommended by Hee Shen to its presidential election.

In *California Trial Lawyers*, the California Trial Lawyers Association (CTLA) held its annual election for president. (*California Trial Lawyers*, *supra*, 187 Cal.App.3d at p. 577.) The CTLA bylaws provided that a candidate must have served as an officer of the association for at least one year in the preceding five years. (*Ibid.*) One of the two candidates was challenged because he was serving as an officer that year and would be five days short of a full year if elected. (*Ibid.*) The CTLA president formed a committee to investigate the issue and recommended that the candidate be deemed qualified. (*Id.* at p. 578.) The board adopted the recommendation, and the candidate was elected. (*Ibid.*) The trial court granted a petition directing the CTLA to disqualify that candidate and install the other candidate. (*Ibid.*)

The appellate court reversed, concluding that the pertinent provisions of the CTLA bylaws were not "so clear and unambiguous that the question of who shall assume the office of president-elect may be answered without

11

engaging in an interpretation of those provisions." (*California Trial Lawyers*, *supra*, 187 Cal.App.3d at p. 580.) It cited other provisions in the bylaws that required the board to select officers at its annual meeting, which may occur later than the date specified in the bylaws from which each term began to run. (*Ibid.*) The appellate court explained that interpretation of these ambiguous bylaws constitutes the type of judicial interference that *California Dental* cautioned against: "interfering with an organization's autonomy by substituting 'judicial judgment' for that of the association's in an area where the association is more competent." (*California Trial Lawyers*, at pp. 579–580.) So too here. Given the ambiguous language of the bylaws, including that Hee Shen makes "recommendations" and Yeong Wo then elects a "person" for its president, the policy of judicial restraint controls.

None of Hee Shen's other arguments are persuasive. First, Hee Shen contends that Yeong Wo and Leung failed to argue the interpretation of the bylaw provision regarding "recommendations" at trial. We disagree. Defendants' trial brief, for example, advanced Yeong Wo's interpretation that "the Bylaws provide that Yeong Wo elects the president, not the rotating constituent organization, and that Yeong Wo should make the final decision on president." Defendants argued that the 2021-2022 election did not plainly contravene Yeong Wo's bylaws because "the constituent organization may recommend nominees, but the Bylaws do not require that Yeong Wo elect a recommended nominee." During closing argument, defense counsel reiterated: "The constituent organization makes recommendations and puts the recommendations in a report. [¶] The bylaws do not state that Yeong Wo is required to elect a recommended person." He continued: "[A] recommendation is not a requirement, and it cannot be said that Yeong Wo plainly contravened the bylaws. Hee Shen was allowed to make its

12

recommendations, and that's what the bylaws provide. . . . But it does not say that Yeong Wo is required to pick from one of those two nominees. And I believe that leaves an ambiguity in the bylaws that Yeong Wo is allowed to interpret and determine."

Second, Hee Shen points to other portions of the bylaws to argue that Yeong Wo's interpretation is "unreasonable." Hee Shen cites the provision that the nominating tang can "elect member(s) as candidate(s)" for the position of Yeong Wo president. But that language describes the process for how a nominating tang selects its recommended candidates, not necessarily how Yeong Wo conducts its own election. Hee Shen cites another paragraph in the bylaws that provides, if recommended candidates are not qualified and Yeong Wo rejects their nomination, the nominating tang must be notified to recommend a different candidate. Again, this language describes a process for the nominating tang to recommend candidates—it does not unambiguously limit Yeong Wo's election to only those recommended candidates.

Hee Shen also cites the bylaw provision that the nominating tang conduct a "fair and equitable" selection of its candidates. According to Hee Shen, Yeong Wo reasoned it could add candidates to the 2021-2022 election because Hee Shen's selection was not "fair and equitable," but the trial court ultimately found the selection was fair and equitable here. Again, this provision relates to Hee Shen's process for recommending candidates (and the aspirational intent to do so fairly and equitably). It does little to provide clarity concerning the ambiguity at issue. Hee Shen does not identify evidence or argument that Yeong Wo's power to add other candidates was triggered *only if* Hee Shen had not conducted a fair and equitable selection. Yeong Wo's president testified that it "could" have held its election with only

13

the two Hee Shen recommended candidates if Yeong Wo had not received any complaints about Hee Shen's selection process. But the reasoning behind Yeong Wo's decision to exercise its potential authority under the ambiguous bylaw provision does not restrict that authority.

Finally, Hee Shen contends there was no evidence at trial that Yeong Wo adopted its interpretation of the bylaw provision regarding "recommendations" prior to the commencement of this litigation. As a preliminary matter, Hee Shen offers no authority to support its position that an association is limited in challenging judicial review of its bylaw interpretations to only those interpretations that have already been explicitly adopted. *California Dental* did not so hold, as the parties in that case were not "engaged in a dispute concerning the *interpretation* of the [association's] bylaws." (*California Dental, supra,* 23 Cal.3d at p. 355, fn. 3.) Nor do cases after *California Dental* appear to suggest such a limitation. (Cf. *Berke v. Tri Realtors* (1989) 208 Cal.App.3d 463, ["Here, our review is limited solely to whether the board's action in declining to arbitrate the [dispute] plainly contravened its bylaws"].) Even if they did, there was evidence at trial regarding Yeong Wo's interpretation that it was not required to limit its election to only Hee Shen recommended candidates. At trial, counsel asked Yeong Wo's president at the time of the election: "And isn't it correct that the Yeong Wo decided to override the Hee Shen Tang's decision to nominate just two people because you didn't agree that only—there should only be two candidates?" He answered: "Not that. According to Yeong Wo's bylaw, as long as the person is upstanding person and have not made any mistakes, that this person is eligible to become a candidate."

Moreover, the trial court *excluded* evidence relevant to Yeong Wo's interpretation of the provision regarding candidate recommendations. Hee

14

Shen moved in limine to exclude evidence of prior Yeong Wo elections under Evidence Code section 352. Defendants opposed the motion, arguing that past elections were relevant to how Yeong Wo interpreted its bylaws. Specifically, defendants identified elections for (1) Yeong Wo secretary in the 2017-2018 term where Hee Shen had recommended only two of the five applicants, Yeong Wo's board voted to allow all five candidates to run, and a non-recommended candidate served in the position; and (2) Yeong Wo president in the 2019-2020 term, where another tang had recommended only two of the four applicants, and Yeong Wo's board (including its Hee Shen members) voted to allow all four candidates to run. The members then elected a non-recommended candidate (with supporting votes from Hee Shen members).

The trial court granted the motion to exclude this evidence, stating that the issue was "time specific to this particular situation" and, "I just don't think it's relevant to this particular proceeding." But "[t]he use of 'course of performance' evidence as extrinsic evidence is acknowledged in case law and was ultimately codified in Code of Civil Procedure section 1856." (*Employers Reinsurance Co. v. Superior Court* (2008) 161 Cal.App.4th 906, 920.) "As with all extrinsic evidence, course of performance evidence can be used not only to interpret an ambiguity, but also to reveal one in language otherwise thought to be clear." (*Ibid.*; see also *Scheire v. International Show Car Assn.* (*ISCA*) (9th Cir. 1983) 717 F.2d 464, 466 [explaining that ISCA's action was consistent with past practice and its "desire to act in accordance with precedent was not unreasonable"].) We agree with defendants that the trial court abused its discretion in excluding this course of performance evidence

15

relevant to Yeong Wo's interpretation of its bylaws.[2] (See *Employers Reinsurance*, at pp. 919–920.)

In sum, we are not persuaded there was substantial evidence to support the finding that Yeong Wo's bylaws were clear and unambiguous such that the process it employed to pick its president for the 2021-2022 term was an abuse of Yeong Wo's own discretion. The trial court should not have intervened under the first step of the *California Dental* framework and we reverse the judgment.[3]

We decline to reach the parties' arguments regarding the second step of the *California Dental* framework: the extent to which judicial relief is available based on balancing the interests of the aggrieved party against the burden on the courts and infringement of the association's autonomy. (*California Dental, supra,* 23 Cal.3d at p. 354.) We note that the trial record concerning the second step is a morass. For example, the trial court excluded evidence relevant to the balancing test: when defense counsel attempted to question a witness about the effect an invalidated election would have on

---

[2] We note that we do not see any merit in defendants' other argument that the trial court abused its discretion when it granted a motion in limine to exclude evidence regarding a Hee Shen membership dispute. Consideration of such a dispute may have been relevant to the reason Yeong Wo exercised its purported authority, but not the authority itself. Nor do we see merit in defendants' argument that the trial court abused its discretion in sustaining relevance objections to (1) the questioning of a witness who was a non-voting "advisor" to Yeong Wo on his opinion of the bylaws; and (2) the questioning of another witness on the bylaws, when defense counsel presented contradictory and confusing offers of proof, ultimately stating the testimony sought to explain a "cultural understanding" of the Chinese language phrase in the bylaws that had been translated into English as "two or more."

[3] Given this conclusion, we need not address Yeong Wo and Leung's alternate request that we reverse and remand for a new trial because the trial court abused its discretion on the evidentiary rulings described above.

16

Yeong Wo, Hee Shen's counsel objected and stated, "It doesn't matter what effect is on the defendant." The court sustained the objection.[4] The trial court instead appeared focused only on the perceived equities, explaining that the relief awarded was "a just result in this case" because Yeong Wo's actions were "willful."

The statement of decision included the bare conclusion that the court "finds that the interest of Defendant Yeong Wo regarding the election does not outweigh the aggrieved interests of Plaintiff, and therefore exercises its jurisdiction on this matter." But two months later, the trial court issued rulings on defendants' objections, which had been lodged before the statement of decision became final. The court overruled defendants' objection that it did not apply the balancing test required under the second step of *California Dental* and stated: "This case requires no balancing test." It is difficult to say whether the trial court actually applied the correct balancing test. It is apparent that the court lacked substantial evidence that any balancing supported a judgment requiring a new election with Hee Shen's approved nominees for a new, full two-year term, entered as the 2021-2022 term was nearing its conclusion.

## DISPOSITION

The judgment is reversed and the trial court is directed to enter judgment in favor of defendants. Yeong Wo and Leung are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

---

[4] Hee Shen has moved to strike this argument for failure to raise it in the opening brief. The motion is denied, as the opening brief argues that the trial court erred on the second step because it excluded evidence and cites the relevant page of the record.

_____
Markman, J.*

We concur:


_____
Stewart, P.J.


_____
Richman, J.


*Hee Shen Cemetery and Benevolent Association v. Yeong Wo Association et al.*
(A165514)


 \* Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                              San Francisco County Superior Court

Trial Judge:                             Hon. Sylvia Lee Husing


Attorneys for Plaintiff            Law Office of Gerald Clausen
and Respondent:                    Gerald Clausen

                                                Breall & Breall, LLP
                                                Joseph M. Breall
                                                Christina Q. Nguyen

Attorneys for Defendants       Essential Law Group, PC
and Appellants                        Charlie W. Yu