[S. F. No. 18399.   In Bank.   May 19, 1953.]

JOE MANDRACIO, Appellant, v. BARTENDERS UNION,
LOCAL 41 et al, Respondents.

Allan L. Sapiro, Aaron Sapiro and G. C. Ringole for Appellant.

Charles P. Scully for Respondents.

GIBSON, C. J.—This appeal was taken by plaintiff from a judgment against him in an action which he brought to recover damages for loss of wages during the time he was refused membership by defendant union.

Plaintiff, a member of a local bartenders union in San Diego, which was affiliated with the Hotel and Restaurant Employees and Bartenders International Union, obtained a traveling card from his local union and moved to San Francisco. He presented the card to defendant Local 41, another affiliate of the International Union, on December 29, 1945, and was told to return the following Friday when the executive board would take in traveling cards. Plaintiff returned on January 4, but his traveling card was not accepted, and he was not admitted to membership; instead, his name was placed on a registration list, and he was given a priority number. It had theretofore been the practice of Local 41 to admit members of other locals, as required by section 60 of the constitution of the International Union,* upon presentation of proper credentials. However, at or about the time plaintiff presented his card, the officers of Local 41 determined to put into effect a policy which was designed to protect the job rights of its members, about 700 of whom were in the armed forces. Under this plan the holder of a traveling card would not be admitted until all members, including those returning from military service, had been placed in jobs, and he had been assigned work in accordance with the rules of the local union.

It appears that a system of registration and work assignment had been suggested to Local 41 by a vice-president of

---

*Section 60 of the International's constitution provided in part: "Local Unions shall be compelled to recognize and admit members who travel from one city to another, provided such members bring a traveling card and membership book from a Local Union in good standing and the card and book is properly signed and seal attached, and members so admitted shall be allowed to participate in all of the work coming under the jurisdiction of the Local Union subject to the rules for employment prevailing in the Local accepting the traveling card. All such rules for employment must be approved by the General President."

the International Union sometime in 1945, and in February 1946 officials of Local 41 discussed with the executive board of the International Union the procedure which might be followed in assigning work to persons transferring to the local on a traveling card. No formal or written interpretation of section 60 of the International constitution was given at that time, but in 1949 the general president of the International wrote the secretary of Local 41 as follows:

"You have asked me to advise you by letter concerning the action taken by the General Executive Board during its February, 1946 meetings with reference to the precedents to be followed in registering travel cards.

"The problem was first considered on February 15, 1946 when a committee composed of Bruno Mannori, President, yourself, and several others representing other local unions, appeared before the Board for advice concerning the procedure to be followed in assigning work to persons coming into the Union on a travel card. The local unions wish to know in what order persons transferring into their unions should be assigned work.

"The matter was discussed with our then General Counsel, Judge Joseph A. Padway, who advised us that under Section 60 of our constitution, local unions could make holders of traveling cards subject to their local work rules. I then advised Brother McDonough to inform your committee that it was our interpretation of the constitution that the following procedure could be followed:

"1. When a traveling card was produced by a member from another local, such incoming member should be given a place at the bottom of the work list. That is, his name should be added to those who are waiting for assignment to jobs; that such member be given a number entitling him to a job assignment when his number is called in accordance with the uniform work rules of the local union.

"2. As soon as such incoming member was assigned to a job he should be admitted to full membership privileges.

"3. In the event that a member was able to secure employment on his own initiative, but in accordance with the local union's rules, he should then be admitted to full membership.

"It was my feeling at the time that some members transfer into local unions without ever intending to work at the trade, and that such transfer is a violation of Section 6-C of the constitution which requires a member to be employed at the trade in order to be eligible for membership. It was also

my feeling that the procedure outlined above would give such member the best opportunity of indicating his sincerity in seeking work before membership was extended to him.

"This procedure has been the policy of the International Union, and locals concerned with the problems involved were informed to this effect."

With respect to the procedure followed by Local 41, its secretary testified that the holder of a transfer card would not be admitted to membership even if he found a job on his own initiative and that he would not be allowed to solicit work until he had been a member of the local for 90 days. According to the secretary this procedure was adopted in order to prevent holders of transfer cards from displacing members of the local union who had jobs.

Plaintiff testified that he had opportunities to obtain employment in five places but was refused work because he was not a member of Local 41 and that in each of these places he was told he would be employed after he had been admitted. He made repeated requests for admission but was not granted membership until August 10, 1948, over 32 months after he presented his traveling card, and in the meantime he was unable to obtain work in San Francisco as a union bartender.

The trial court found and concluded that the local union was governed by the constitution of the International Union, that the procedure outlined in the letter of the International's president interpreting section 60 of the constitution was complied with by Local 41, and that the action taken by the local with respect to the manner in which plaintiff's traveling card was handled was in accordance with the provisions of the constitution.

It should be noted at the outset that if, as plaintiff claims, he is entitled to damages based upon a breach of a contractual right given him by the constitution of the International Union, it is unnecessary to consider the possible application of the rules of law pertaining to arbitrary denial of membership in a union which holds closed shop contracts with the employers in the area. (*Cf. Dotson* v. *International Alliance etc., Employes,* 34 Cal.2d 362 [210 P.2d 5] ; *James* v. *Marinship Corp.,* 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900].) It should likewise be noted that although plaintiff has prayed for declaratory relief, his complaint is in fact one for damages. (See *Standard Brands of California* v. *Bryce,* 1 Cal.2d 718, 721 [37 P.2d 446].)

The constitution of the International is a part of the contract between the union and its members and governs Local 41. The provisions of section 60 are plain and unambiguous, and they clearly require a local union to grant admission to a member from another city who tenders properly authenticated credentials. There is no claim that there was any necessity for checking on plaintiff's credentials or qualifications or that his admission was delayed for that purpose. Nor are we confronted here with the question of what rules the local union could make with respect to work assignments after admission of the holder of a traveling card or whether the local union could by such rules have protected the job rights of its members, including those in the armed forces. Instead, the question is whether the local could deny the holder of a traveling card admission to membership in order to accomplish this purpose. Under the plain terms of section 60 of the constitution the local could not do so. It follows that if, as defendants contend, the general president interpreted the constitution as permitting the procedure followed in this case, then his construction was not a reasonable one, was not binding on the members of the union and will not be recognized by the courts. (See *DeMille* v. *American Fed. of Radio Artists,* 31 Cal.2d 139, 147 [187 P.2d 769, 175 A.L.R. 382]; *Riviello* v. *Journeymen Barbers etc. Union,* 109 Cal. App.2d 123, 128-129 [240 P.2d 361].) In view of this conclusion it is unnecessary for us to determine whether the evidence supports the finding that defendants complied with the procedure set forth in the president's letter.

The judgment cannot be affirmed on the theory that plaintiff was barred by laches or estoppel. The defense of laches is not available in an action at law for damages. (*Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, 752 [192 P.2d 935].) In support of their claim that plaintiff is estopped defendants assert that he failed to initiate any charges within the local or the International Union after he was refused admission, that when admitted plaintiff said he was satisfied with the way his traveling card had been handled, and that he thereafter accepted the benefits of membership. The defense of estoppel was pleaded, but no findings were made thereon, and this court should not affirm the judgment on the basis of that defense unless all the elements of estoppel are established. Defendants have not called our attention to any procedure which plaintiff might have followed within the framework of the union in order to compel Local 41 to admit him

to membership upon presentation of a traveling card, nor have they shown that they changed their position or relied upon plaintiff's conduct to their injury. Plaintiff's statement on being admitted that he was satisfied with the way his traveling card had been handled and his subsequent acceptance of the benefits of membership did not operate to estop him from asserting any rights which may have accrued before his admission.

The judgment is reversed.

Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

