378 P.3d 992

**ASSOCIATION OF APARTMENT OWNERS OF ROYAL ALOHA, a Hawai'i non-profit corporation, Plaintiff–Appellant,**

v.

**CERTIFIED MANAGEMENT, INC., a Hawai'i corporation; Chaney Brooks & Company, LLC, a Hawai'i corporation; Michael David Bruser, an individual; Tokyo Joe's, Inc., a Hawai'i corporation; Michael T. McCormack, individually and as Trustee under that certain unrecorded Michael T. McCormack Revocable Living Trust Agreement dated November 12, 1991; and Michael T. McCormack and Signa S. McCormack, as Co-Trustees of The McCormack Ranch Trust dated January 6, 2005, Defendants–Appellees,**

and

**Doe Entities 1–10, Defendants.**

**No. CAAP–15–0000445.**

Intermediate Court of Appeals of Hawai'i.

June 30, 2016.

address Krstoth's assertion that he was pressured into changing his plea.

Matt A. Tsukazaki (Li & Tsukazaki), Honolulu, on the briefs, for Plaintiff–Appellant.

John D. Zalewski, Michael G. Kozak (Case Lombardi & Pettit of counsel), Honolulu, on

the briefs, for Defendant–Appellee Certified Management, Inc.

James H.Q. Lee, Thomas J. Wong, (Devens, Nakano, Saito, Lee, Wong & Ching), Honolulu, on the briefs, for Defendant–Appellee Chaney Brooks & Company, LLC.

Yuriko J. Sugimura, Honolulu, Jason W. Hirata, (Bendet Fidell Sugimura), on the briefs, for Defendants–Appellees Michael David Bruser; Tokyo Joe's Inc.; Michael T. McCormack, individually and as Trustee under that certain unrecorded Michael T. McCormack Revocable Living Trust Agreement dated November 12, 1991; and Michael T. McCormack and Signa S. McCormack, as Co–Trustees of The McCormack Ranch Trust dated January 6, 2005.

FOLEY, Presiding J., FUJISE and LEONARD, JJ.

Opinion of the Court by FOLEY, J.

Plaintiff–Appellant Association of Apartment Owners of Royal Aloha (**AOAO**) appeals from the following entered in the Circuit Court of the First Circuit[1] (**circuit court**):

(1) "Conclusions of Law, and Order Granting Defendant Certified Management, Inc's Motion for Summary Judgment, Filed 8/5/14, and Order Granting Joinder by: Defendant Chaney Brooks & Company, LLC to Defendant Certified Management Inc.'s Motion for Summary Judgment, Filed 8/12/14" entered on October 9, 2014;

(2) "Amended Conclusions of Law, and Order Granting Defendant Certified Management, Inc's Motion for Summary Judgment, Filed 8/5/14, and Order Granting Joinder by: Defendant Chaney Brooks & Company, LLC

to Defendant Certified Management Inc.'s Motion for Summary Judgment, Filed 8/12/14" entered on October 10, 2014;

(3) "Conclusions of Law, and Order Granting Defendants Michael David Bruser, and Tokyo Joe's Inc.'s Motion for Partial Summary Judgment, Filed 6/19/14" entered on October 9, 2014;

(4) "Order Granting Defendant Certified Management, Inc.'s Motion for Award of Attorneys' Fees and Costs Against Plaintiff AOAO Royal Aloha, Filed 10/24/14" entered on March 31, 2015;

(5) "Order Granting Defendant Chaney Brooks & Company, LLC's Non Hearing Motion for Award of Attorneys' Fees and Costs, Filed 10/24/14" entered on March 31, 2015;

(6) "Order Granting Defendants Michael T. McCormack, Individually and as Trustee and Co–Trustee, and Signa S. McCormack, as Co–Trustee's Motion for Award of Attorneys' Fees and Costs, Filed 10/24/14" entered on March 31, 2015;

(7) "Order Granting Defendants Michael David Bruser and Tokyo Joe's, Inc.'s Motion for Award of Attorneys' Fees and Costs, Filed 10/23/14" entered on March 31, 2015; and

(8) "Final Judgment in Favor of All Defendants Against Plaintiff Association of Apartment of [sic] Owners of Royal Aloha" entered on May 5, 2015.

On appeal, the AOAO contends (1) the circuit court erred in applying the doctrine of laches to grant summary judgment in favor of the defendants; (2) the circuit court erroneously concluded that Hawaii Revised Statutes (**HRS**) § 514A–15.5 (2015 Supp.)[2]

1. The Honorable Karen T. Nakasone presided.

2. HRS § 514A–15.5 provides:

**§ 514A–15.5 Metering of utilities.** (a) Notwithstanding the provisions of section 514A–15, commercial apartments in mixed-use projects containing apartments for both residential and commercial use shall have a separate meter, or calculations shall be made, or both, to determine the use by the commercial apartments of utilities, including electricity, water, gas, fuel, oil, sewerage, and drainage and the cost of the utilities shall be paid by the owners of the commercial units; provided that the

apportionment of the charges among owners of commercial apartments shall be done in a fair and equitable manner as set forth in the declaration or bylaws.

Notwithstanding any provision to the contrary in this chapter or in a project's declaration or bylaws of an association of apartment owners, the board of directors may authorize the installation of separate meters to determine the use by each of the residential and commercial apartments of utilities, including electricity, water, gas, fuel, oil, sewerage, and drainage; provided that the cost of installing the meters shall be paid by the association.

required the AOAO to send a bill to the commercial apartment owners as a condition precedent to the application of the commercial owners' contractual indemnification obligation; and (3) the circuit court abused its discretion in awarding attorneys' fees.[3]

## I. BACKGROUND

The circuit court's factual background is undisputed on appeal:

The Royal Aloha Condominium is a mixed-use condominium project of residential and commercial units. The [AOAO] employed [Chaney Brooks & Company, LLC (**Chaney**)] from 1995 to 2002 and [Certified Management, Inc. (**Certified Management**)] from 2003 to 2010 as its Managing Agent.

Defendants[-Appellees] Michael David Bruser [(**Bruser**)] and Tokyo Joe's Inc. [(**Tokyo Joe's**)] were the owners of commercial unit "C–1" in the Royal Aloha Condominium, during the relevant period.

Defendants[-Appellees] Michael T. McCormack [(**McCormack**)], individually and as Trustee under that certain unrecorded Michael T. McCormack Revocable Living Trust Agreement dated November 12, 1991 [(**McCormack Trust**)], Michael T. McCormack and Signa S. McCormack, as Co-trustees of The McCormack Ranch Trust dated January 6, 2005 [(**McCormack Ranch Trust**) (collectively, **McCormacks**)] were the owners of commercial unit "C–2" in the Royal Aloha Condominium, during the relevant period.

The [AOAO] controlled the electricity submeters for each unit. The electrical submetering system was installed 16 years ago, in 1998. The [AOAO] used Energy Data Corporation (1998 to 2002) and Bartley Engineering, Inc. (from June 2002) to read each unit's electricity submeter. The electrical engineers, from Energy Data or Bartley Engineering, read each unit's submeter to prepare a "Utility Billing Register" (UBR). The UBRs were sent to the Managing Agent [Chaney], then to [Certified Management] when it took over.

One of the Managing Agent's duties was to determine each unit owner's electricity and other pro-rated utility costs, based on the UBR, and bill each unit owner.

During the time period relevant to this lawsuit, from January 1998 to April 2010, the [AOAO, Chaney, and Certified Management] never charged or billed the owners of C–1, and erroneously billed the owners of C–2, for the submetered electricity costs shown in the UBRs. The [AOAO] claims that this was error, and that its managing agents [Chaney and Certified Management] were responsible for this alleged error.

As a result of this error, the [AOAO] brought this lawsuit, alleging that [Bruser, Tokyo Joe's, and the McCormacks], the owners of C–1 and C–2 during the pertinent time frame, owe hundreds of thousands of dollars in electricity costs that were unbilled and misbilled. The [AOAO] also brought claims against its former managing agent, [Chaney and Certified Management], which include breach of contract, breach of fiduciary duty, and negligence, for the alleged incorrect billing.

(b) Notwithstanding any approval requirements and spending limits contained in the declaration or bylaws of an association of apartment owners, the board of directors of any association of apartment owners may authorize the installation of meters to determine the use by each residential or commercial apartment of utilities, including electricity, water, gas, fuel, oil, sewerage, and drainage; provided that the cost of installing the meters shall be paid by the association. The cost of metered utilities shall be paid by the owners of each apartment based on actual consumption and may be collected in the same manner as common expense assessments. Owners' maintenance fees shall be adjusted as necessary to avoid any duplication of charges to these owners for the cost of metered utilities.

3. In its argument section, the AOAO also contends, "the circuit court denied the AOAO its right to a fair hearing when it sua sponte dismissed all legal and equitable claims against the commercial owners." We disregard this argument because it is not presented in accordance with Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28. *See* HRAP Rule 28(b)(4)(D) ("Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented.").

The period of alleged incorrect electricity billing spans 12 years, from January 1998 to April 2010. The [AOAO's] President "discovered" the alleged incorrect billing in April 2011, and this lawsuit was filed in April 2012.

The AOAO filed its complaint against Certified Management, Chaney, Bruser, Tokyo Joe's, and the McCormacks (collectively, **Appellees**) on April 13, 2012, and an amended complaint on April 16, 2012 (**First Amended Complaint**).

Bruser and Tokyo Joe's filed a motion for partial summary judgment on May 15, 2013 (**May 2013 Motion for Partial Summary Judgment**). Bruser and Tokyo Joe's argued that they had no contractual obligation to indemnify the AOAO under Section 6.02 of the AOAO's Bylaws. Bruser and Tokyo Joe's argued in the alternative that the AOAO's claims and damages should be limited to the applicable statute of limitations period. Additionally, Bruser and Tokyo Joe's argued that the AOAO's claims for equitable relief were barred by the doctrines of waiver, laches, and unclean hands. Chaney filed a motion to join the May 2013 Motion for Partial Summary Judgment on May 24, 2013. Certified Management filed a motion to join the May 2013 Motion for Partial Summary Judgment on June 25, 2013.

On July 9, 2013, the circuit court held a hearing on Bruser and Tokyo Joe's May 2013 Motion for Partial Summary Judgment, Chaney's motion to join the May 2013 Motion for Partial Summary Judgment, and Certified Management's motion to join the May 2013 Motion for Partial Summary Judgment. At the hearing, the circuit court requested the parties submit supplemental briefs on the application of the statute of limitations.

On July 18, 2013, Chaney submitted a supplemental brief on the issue of statute of limitations, arguing that the AOAO's claims were barred under HRS § 657-1 (1993).[4] On August 1, 2013, Bruser and Tokyo Joe's submitted a supplemental memorandum in support of their May 2013 Motion for Partial Summary Judgment arguing that the statute of limitations barred or limited the AOAO's damages.

On September 9, 2013, the circuit court entered an order denying Bruser and Tokyo Joe's Motion for Partial Summary Judgment and Certified Management and Chaney's motions to join.

On June 19, 2014, the McCormacks filed a motion for partial summary judgment or in the alternative to stay litigation (**McCormack Motion for Partial Summary Judgment**). On the same day, Bruser and Tokyo Joe's filed a motion for partial summary judgment (**June 2014 Motion for Partial Summary Judgment**). On June 24, 2014, Chaney filed a motion to join the McCormack Motion for Partial Summary Judgment and Bruser and Tokyo Joe's June 2014 Motion for Partial Summary Judgment.

On August 5, 2014, Certified Management filed a motion for summary judgment (**Certified Management MSJ**). Certified Management argued that the AOAO's claims were statutorily time-barred and barred by laches.

On August 7, 2014, Certified Management filed a motion to join Bruser and Tokyo Joe's June 2014 Motion for Partial Summary Judgment.

On August 12, 2014, Chaney filed a motion to join the Certified Management MSJ.

On August 20, 2014, the circuit court held a hearing on the McCormack Motion for

---

4. HRS § 657-1 provides:

§ **657-1 Six years.** The following actions shall be commenced within six years next after the cause of action accrued, and not after:

(1) Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court; excepting further that actions for the recovery of any debt founded upon any contract, obligation, or liability made pursuant to chapter 577A shall be governed by 577A;

(2) Actions upon judgments or decrees rendered in any court not of record in the State, or, subject to section 657-9, in any court of record in any foreign jurisdiction;

(3) Actions for taking or detaining any goods or chattels, including actions in the nature of replevin;

(4) Personal actions of any nature whatsoever not specifically covered by the laws of the State.

Partial Summary Judgment and denied the motion.

On September 5, 2014, Chaney filed a motion for summary judgment on the issue of successor liability.

On September 9, 2014, the circuit court held a hearing on Bruser and Tokyo Joe's June 2014 Motion for Partial Summary Judgment and took the issues under advisement in anticipation of the hearing on the Certified Management MSJ.

On September 15, 2014, the AOAO filed for partial summary judgment against Bruser, Tokyo Joe's, and the McCormacks.

On September 26, 2014, the circuit court held a hearing on the Certified Management MSJ and Chaney's joinder motion, in which it took the matter under advisement.

On September 29, 2014, Certified Management filed a "Motion for Summary Judgment and Dismissal on All Claims Based on Ratification, Estoppel, and Waiver, and for Dismissal of Punitive Damage Claim" (**MSJ on All Claims**). [JROA doc 56 at 388] On October 7, 2014, Chaney filed a motion to join Certified Management's MSJ on All Claims.

On October 9, 2014, the circuit court entered conclusions of law and an order granting the Certified Management MSJ and granting Chaney's motion to join the Certified Management MSJ. The basis for the circuit court's order granting the Certified Management MSJ was the defense of laches. On the same day, the circuit court entered conclusions of law and an order granting Bruser and Tokyo Joe's June 2014 Motion for Partial Summary Judgment on the grounds that under Section 6.02 of the AOAO's Bylaws and HRS § 514A–15.5, Bruser and Tokyo Joe's had no obligation to indemnify the AOAO for electricity costs.

On October 10, 2014, the circuit court held a hearing in which it announced that it would bar all of the AOAO's claims based on the defense of laches. The circuit court entered an order on the same day, amending its conclusions of law granting the Certified Management MSJ to include all claims against all defendants as barred under the doctrine of laches (**Amended Conclusions of Law**).

On March 31, 2015, the circuit court entered orders granting attorneys' fees and costs to the McCormacks, Chaney, Certified Management, Bruser, and Tokyo Joe's.

On May 5, 2015, the circuit court entered its "Final Judgment in Favor of All Defendants Against [AOAO]."

The AOAO filed its notice of appeal on June 4, 2015.

## II. STANDARD OF REVIEW

### A. Summary Judgment

■ Summary judgment decisions are reviewed *de novo*. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22 [ (1992) ]. "Unlike other appellate matters, in reviewing summary judgment decisions an appellate court steps into the shoes of the trial court and applies the same legal standard as the trial court applied." *Beamer v. Nishiki*, 66 Haw. 572, 577, 670 P.2d 1264, 1270 (1983) (citation omitted). Summary judgment will be upheld "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Heatherly v. Hilton Hawaiian Vill. Joint Venture*, 78 Hawai'i 351, 353, 893 P.2d 779, 781 (1995) (citations omitted).

*Ass'n of Apartment Owners of Maalaea Kai, Inc. v. Stillson*, 108 Hawai'i 2, 7, 116 P.3d 644, 649 (2005).

### B. Equitable Relief

■ "A court's decision to invoke equitable relief, such as the 'unclean hands' doctrine, is a matter within its discretion." *7's Enters., Inc. v. Del Rosario*, 111 Hawai'i 484, 489, 143 P.3d 23, 28 (2006). "A trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." *Id.* (quoting *Sugarman v. Kapu*, 104 Hawai'i 119, 124, 85 P.3d 644, 649 (2004)).

## C. Statutory Interpretation

■ "The interpretation of a statute is a question of law reviewable *de novo.*" *Ass'n of Condo. Homeowners of Tropics at Waikele ex rel. Bd. of Dirs. v. Sakuma,* 131 Hawai'i 254, 255, 318 P.3d 94, 95 (2013) (brackets and ellipses omitted) (quoting *State v. Bohannon,* 102 Hawai'i 228, 232, 74 P.3d 980, 984 (2003)).

## D. Interpretation of a Contract

■ "When reviewing the court's interpretation of a contract, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court." *Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship,* 115 Hawai'i 201, 213, 166 P.3d 961, 973 (2007) (quoting *Mikelson v. United Servs. Auto. Ass'n,* 107 Hawai'i 192, 197, 111 P.3d 601, 606 (2005)).

## III. DISCUSSION

### A. Defense of Laches

#### 1. Availability of Laches as a Defense to Legal Claims

■ The AOAO contends the circuit court erred in dismissing the AOAO's legal claims, in addition to its equitable claims, under Appellees' laches defense. In response, Appellees argue that in some jurisdictions, laches is available as a defense regardless of whether the remedy sought is in law or equity.

"The doctrine of laches reflects the equitable maxim that 'equity aids the vigilant, not those who slumber on their rights.'" *Adair v. Hustace,* 64 Haw., 314, 320, 640 P.2d 294,

300 (1982) (quoting 2 S. Symonds, Pomeroy's Equity Jurisprudence § 418 (5th ed. 1941)). "Where applicable, it acts to bar a court from considering an equitable action such as for cancellation because of a perception that it is more equitable to defendants and important to society to promote claimant diligence, discourage delay and prevent the enforcement of stale claims." *Adair,* 64 Haw. at 320–21, 640 P.2d at 300 (citing 2 S. Symonds, Pomeroy's Equity Jurisprudence § 418).

The doctrine of laches under Hawai'i law is similar to yet distinct from the statute of limitations.[5] The Hawai'i Supreme Court has explained,

> Just as the statute of limitations establishes the requisite degree [of diligence in bringing suit] for actions at law, so is laches the rule for equitable actions. But a major difference between the statute of limitations and laches is the flexibility of the latter. "The statute of limitations consorts with the rigid principles of the common law, but is ill adapted to the flexible remedies of a court of equity." [*Patterson v. Hewitt,* 195 U.S. 309, 317, 25 S.Ct. 35, 49 L.Ed. 214 (1904).] As a result, while "in actions at law, the question of diligence is determined by the words of the statute … in suits in equity the question is determined by the circumstances of each particular case." [*Id.*]

*Adair,* 64 Haw. at 321, 640 P.2d at 300 (parentheses and footnote omitted).

■ Laches is a defense that is available where a plaintiff seeks equitable relief,[6] and

---

**5.** 2 S. Symonds, Pomeroy's Equity Jurisprudence § 419a (5th ed. 1941) provides in relevant part:

> Under ordinary circumstances a suit in equity will not be stayed for laches before the time fixed by the analogous statute of limitations, and the court will run very nearly, if not quite up to, the measure of the statute, but, if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the court will determine the extraordinary case in accordance with the equities which condition it.
>
> (Footnotes omitted.)

**6.** *See* 27A J. Bordeau and R. Kane, Am.Jur.2d Equity § 110 (2d Ed.2016) ("A suit in equity,

though otherwise meritorious, may be dismissed if the elements of laches are shown."). "[T]he defense of laches generally applies to equitable actions and remedies. Laches may apply to bar: Reformation of a contract[;] Rescission[;] An equitable proceeding to set aside a probate decree[;] Quiet title actions [; and] Injunctive relief." *Id.* at § 116 (format altered) (footnotes omitted).

We note that both state and federal courts "are divided on whether laches applies only to equitable actions or applies also to actions at law." *Id.* at § 117. For example,

> [s]ome federal courts hold that, after the Federal Rules of Civil Procedure merged legal and equitable claims into a single civil action, the Rules specifically recognized the right to interpose the equitable defense of laches in a civil

its availability is not dependent on the type of relief pleaded but instead on the nature of the underlying action. *See Wells Fargo Bank v. Bank of America,* 32 Cal.App.4th 424, 38 Cal.Rptr.2d 521, 530 (1995) ("Although declaratory relief is an equitable proceeding, whether laches is available in a declaratory relief proceeding depends on the nature of the underlying claim."). California courts, for example, bar the application of laches where "an action formulated as a declaratory relief action ... really amount[s] to an action for damages." *Id.*[7] (citing *Mandracio v. Bartenders Union, Local 41,* 41 Cal.2d 81, 256 P.2d 927 (1953)). Where the nature of a plaintiff's cause of action is legal rather than equitable, the defense of laches is not available as a defense. *See* 27A J. Bordeau and R. Kane, Am.Jur.2d Equity at § 117 ("Some courts state that laches is usually available only in suits strictly in equity or in actions at law that involve claims of an essentially equitable character.").

The AOAO's First Amended Complaint includes a breach of contract claim against Chaney and Certified Management; a breach of fiduciary duty claim against Chaney and Certified Management; a negligence claim against Chaney and Certified Management; a negligent misrepresentation claim against Certified Management; a breach of the covenant of good faith and fair dealing claim against Certified Management; an indemnification claim against Bruser, Tokyo Joe's, McCormack Trust, and McCormack Ranch Trust; an unjust enrichment claim against Bruser, Tokyo Joe's, McCormack Trust, and McCormack Ranch Trust; a surety and guaranty claim against Bruser, McCormack, and McCormack Trust; and a declaratory relief claim against Bruser, McCormack, and McCormack Trust.

Except for the AOAO's declaratory relief claim, every cause of action against Appellees in the AOAO's First Amended Complaint is based in contract and the AOAO sought monetary damages as relief. In addition to a "money judgment," the AOAO prayed for "[a] judicial declaration that MCCORMACK and MCCORMACK TRUST are, joint and severally, responsible and liable for the failures and breaches of performance by MCCORMACK RANCH TRUST and are responsible and liable to the [AOAO] for the unpaid electricity charges and other assessments and charges owed to the [AOAO]." The AOAO is essentially seeking a judicial pronouncement stating that McCormack and the McCormack Ranch Trust have breached their contractual obligations. The inclusion of declaratory relief does not change the nature of the AOAO's claims based in contract against Appellees. Because the AOAO sought legal rather than equitable remedies, Appellees were precluded from using the defense of laches to bar the AOAO's claim against them. *See Wells Fargo Bank,* 38 Cal.Rptr.2d at 530 ("[T]he laches defense is unavailable in an action at law for damages 'even though combined with the cumulative remedy of declaratory relief.'" (quoting *Abbott v. City of Los Angeles,* 50 Cal.2d 438, 326 P.2d 484, 498 (1958))). We agree with the AOAO's contention that the defense of laches, as a matter of law, applies only to equita-

---

action and laches became part of the general body of rules governing relief in the federal court system, extending to suits at law as well as suits brought in equity. It is reasoned that, with the merger of law and equity, there is no longer a good reason to distinguish between the legal and equitable character of defenses, save as the distinction may bear on matters unaffected by the merger, such as the right to trial by jury in cases at law, a right preserved in federal courts by the Seventh Amendment to the United States Constitution. Thus, it has been stated that laches can be argued regardless of whether the suit is at law or equity, because, as with many equitable defenses, the defense of laches is equally available in suits at law. On the other hand, some federal courts, while recognizing laches as an affirmative defense generally allowable under the Federal Rules of Civil Procedure, nevertheless consider laches properly to be relevant only where the claims presented may be characterized as equitable rather than legal. Thus, according to some federal courts, laches is an equitable defense, unavailable in actions at law that are governed by a statute of limitations. *Id.* (footnotes omitted).

7. *See also* 27A J. Bourdeau and R. Kane, Am. Jur.2d at § 116 ("Laches has sometimes been deemed to be instructive by analogy even though the action was not an equitable one, where the court felt that equitable considerations were at the heart of the claim.").

ble claims.[8]

## 2. Summary Judgment on Defense of Laches

Because we hold that as a matter of law, the defense of laches applies only where a plaintiff has alleged an equitable claim and seeks equitable relief, Appellees were not entitled to summary judgment. *See* Hawai'i Rules of Civil Procedure (**HRCP**) Rule 56(c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). The circuit court erred in granting summary judgment as to all claims and all defendants based on the defense of laches.

## B. The AOAO's Bylaws and HRS § 514A–15.5

■■■ The AOAO contends the circuit court erred in granting partial summary judgment to Bruser and Tokyo Joe's on the indemnification issue. The AOAO challenges the circuit court's interpretation of HRS § 514A–15.5 requiring the AOAO to have billed owners for submetered electricity before the AOAO could assert its contractual right under Section 6.02 of the AOAO's Bylaws [9] to recover the charges from the owners. The AOAO argues, "Nothing in the plain reading of HRS § 514A–15 [ (2006 Repl.) [10]] and HRS § 514A–15.5 excuses or

---

8. Because we hold that Appellees may not assert laches as a defense to the AOAO's legal claims, we need not address the AOAO's argument that the doctrine of unclean hands bars Appellees' assertion of the defense of laches.

9. Section 6.02 of the AOAO's Bylaws states in its entirety:

ARTICLE VI
Obligations of Apartment Owners
. . . .
Section 6.02. Repairs; Utilities.
(a) Every apartment owner at all times and at his own expense shall restore, repair, maintain, and keep his apartment and all necessary reparations and amendments thereto in good and safe order and condition, and shall be responsible for all loss and damage caused by his failure to do so. If an apartment owner fails to perform such work after reasonable notice by the [AOAO], he shall reimburse the [AOAO] promptly on demand for all expenditures incurred by it in performing such work as may be authorized by the Board of Directors or the Managing Agent.
(b) Every apartment owner at all times and at his own expense shall pay all rates and other charges for public utility and other services which are separately metered or otherwise charged to his apartment and shall indemnify the [AOAO] against all of such rates and other charges.
(c) All repairs of internal installations within each apartment such as water, light, gas, power, sewage, telephones, air conditioning, sanitation, doors, windows, lamps, and all other fixtures and accessories belonging to such apartment, including interior walls and partitions and the inner decorated or finished surfaces of the perimeter walls, floors, and ceilings of such apartment shall be at the apartment owner's expense.

(d) Every apartment owner shall promptly reimburse the [AOAO] on demand for all expenditures incurred by it in repairing or replacing any common elements or any furniture, furnishings, or equipment thereof damaged or lost through the fault of such apartment owner or any person using the Project under him, and shall give prompt notice to the resident manager, if any, or to the Managing Agent of any such damage, loss, or other defect when discovered.

10. HRS § 514A–15 provides:

**§ 514A–15 Common profits and expenses.**
(a) The common profits of the property shall be distributed among, and the common expenses shall be charged to, the apartment owners, including the developer, in proportion to the common interest appurtenant to their respective apartments; provided that in a mixed-use project containing apartments for both residential and commercial use, such charges and distributions may be apportioned in a fair and equitable manner as set forth in the declaration; provided further that all limited common elements costs and expenses, including but not limited to, maintenance, repair, replacement, additions and improvements shall be charged to the owner of the apartment to which the limited common element is appurtenant in an equitable manner as set forth in the declaration.
(b) An apartment owner, including the developer, shall become obligated for the payment of the share of the common expenses allocated to his apartment at the time the certificate of occupancy relating to his apartment is issued by the appropriate county agency; provided that a developer may assume all the actual common expenses in a residential project containing no mixed commercial and residential use, by stating in the abstract as re-

releases an owner from responsibility for electricity charges that they owe, regardless of whether the charges were billed or not."

The circuit court stated in its conclusions of law granting partial summary judgment for Bruser and Tokyo Joe's:

5. The [AOAO] was required to follow HRS Chapter 514A. Thus, the [AOAO] was required to bill [Bruser and Tokyo Joe's] for submetered electricity charges under HRS § 514A–15.5.

6. The [AOAO] also agrees with this construction, stating "the plain language of HRS § 514A–15.5(a) recognizes that a unit owner is to be billed for both the electricity that is a part of the common expenses and also separately for electricity incurred specifically by the unit. As for the manner of billing, HRS § 514A–15.5(b) states that payment from the owners may be collected in the same manner."

7. HRS § 514A–15.5(b) states that "the cost of metered utilities shall be paid by the owners of each apartment based on actual consumption and may be collected in the same manner as common expense assessments."

8. Subsection (b) makes clear that separately metered utilities charges are not "common expenses," but provides that they can be collected like or "in the same manner as" common expense assessments.

9. Subsection (b) says the [AOAO] "may" collect separately metered utilities like common expenses. The use of the term "may," in HRS § 514A–15.5(b) is because an association could have the utility provider bill the owner directly for the separately metered utilities, or, an association could bill and collect the costs of separately metered utilities, similar to assessments for common expenses.

10. In this case, the C–1 submetered electricity costs were never billed to the owners, [Bruser and Tokyo Joe's]. The

[AOAO] was required to bill these separately submetered costs under subsection (a), and to do so "in the same manner as common expense assessments" under subsection (b).

11. Bylaws Section 6.02(b) requires every unit owner, including defendants, to indemnify the [AOAO] for public utilities "which are separately metered or otherwise charged to his apartment." This section, construed in conformity with the Condominium Property Act of HRS Chapter 514A, means that if a unit owner is not directly billed for its separately metered utilities from the utility company, then the separately metered utilities must be "otherwise charged" by the [AOAO], in the same manner as common expenses. *See* § 514A–15.5(a) and (b).

12. The [AOAO] failed to "charge" [Bruser and Tokyo Joe's] for their separately metered electricity costs, as required by HRS § 514A–15.5(a) and (b).

13. The duty to indemnify under Bylaws § 6.02 can only be triggered if the unit owner is "charged." As [Bruser and Tokyo Joe's] were never "charged," Bylaws § 6.02 and the duty to indemnify, do not apply.

. . . .

15. The only reasonable conclusion this court can draw, in light of the billing requirements of HRS § 514A–15.5, is that the [AOAO's] failure to bill or charge the separately metered electricity costs, bars any recovery under the indemnification provision.

16. To adopt the [AOAO's] interpretation of Bylaws § 6.02(b), where a unit owner would have an unending obligation in perpetuity, to pay for all submetered costs incurred, even though the owner was never billed or charged for such costs, would be unreasonable, and contrary to HRS

quired by section 514A–61 that the apartment owner shall not be obligated for the payment of his respective share of the common expenses until such time the developer files an amended abstract with the commission which shall provide, that after a date certain, the respective apartment owner shall thereafter be obligated to pay for his respective share of

common expenses that is allocated to his apartment. The amended abstract shall be filed at least thirty days in advance with the commission with a copy of the abstract being delivered either by mail or personal delivery after the filing to each of the apartment owners whose maintenance expenses were assumed by the developer.

§ 514A–15.5. Thus, summary judgment is granted in Count VI, Indemnification.

(Footnotes and brackets in original omitted.)

We agree with the circuit court's reasoning that to the extent that Bruser and Tokyo Joe's were never billed for their "separately metered" electricity usage or "otherwise charged," the indemnification provision in Section 6.02 of the AOAO's Bylaws is not enforceable. To the extent that Bruser and Tokyo Joe's were never billed, the circuit court properly granted summary judgment on the AOAO's Count VI regarding indemnification as to Bruser and Tokyo Joe's.

The circuit court dismissed all of the remaining claims against Bruser and Tokyo Joe's, apparently on the grounds of "estoppel and laches." Therefore, the circuit court did not reach the issue of whether some of the separately metered electricity usage costs were billed or charged, and suit filed, within the applicable statute of limitations periods. *See, e.g., Assoc. of Apt. Owners of Palms at Wailea–Phase 2 v. Dep't of Commerce & Consumer Affairs*, No. 29033, 2010 WL 4491235 at \*3 (Haw.App. Nov. 10, 2010) (SDO) (where a contract or covenant imposes a continuing or ongoing obligation, statute of limitations begins with each successive breach). We affirm in part as to the AOAO's indemnification claims against Bruser and Tokyo Joe's, and vacate the remaining conclusions in the circuit court's "Conclusions of Law, and Order Granting Defendants Michael David Bruser, and Tokyo Joe's Inc.'s Motion for Partial Summary Judgment, Filed 6/19/14."

## C. Attorneys' Fees

The AOAO challenges the circuit court's award of attorneys' fees and costs to Appellees. Because we hold that the defense of laches does not apply to the AOAO's claims against Appellees, and the circuit court did not reach the issue of the applicable statute of limitations, we vacate the circuit court's awards of attorneys' fees and costs.

## IV.   CONCLUSION

We affirm in part and vacate in part the "Conclusions of Law, and Order Granting Defendants Michael David Bruser, and Tokyo Joe's Inc.'s Motion for Partial Summary Judgment, Filed 6/19/14" entered on October 9, 2014 in the Circuit Court of the First Circuit.

We vacate the following Circuit Court of the First Circuit decisions:

(1) "Conclusions of Law, and Order Granting Defendant Certified Management, Inc.'s Motion for Summary Judgment, Filed 8/5/14, and Order Granting Joinder by: Defendant Chaney Brooks & Company, LLC to Defendant Certified Management Inc.'s Motion for Summary Judgment, Filed 8/12/14" entered on October 9, 2014;

(2) "Amended Conclusions of Law, and Order Granting Defendant Certified Management Inc.'s Motion for Summary Judgment, Filed 8/5/14 and Order Granting Joinder by: Defendant Chaney Brooks & Company, LLC to Defendant Certified Management Inc.'s Motion for Summary Judgment, Filed 8/12/14" entered on October 10, 2014;

(3) "Order Granting Defendant Certified Management, Inc.'s Motion for Award of Attorneys' Fees and Costs Against Plaintiff AOAO Royal Aloha, Filed 10/24/14" entered on March 31, 2015;

(4) "Order Granting Defendant Chaney Brooks & Company, LLC's Non Hearing Motion for Award of Attorneys' Fees and Costs, Filed 10/24/14" entered on March 31, 2015;

(5) "Order Granting Defendants Michael T. McCormack, Individually and as Trustee and Co–Trustee, and Signa S. McCormack, as Co–Trustee's Motion for Award of Attorneys' Fees and Costs, Filed 10/24/14" entered on March 31, 2015;

(6) "Order Granting Defendants Michael David Bruser and Tokyo Joe's, Inc.'s Motion for Award of Attorneys' Fees and Costs, Filed 10/23/14" entered on March 31, 2015; and

(7) "Final Judgment in Favor of All Defendants Against Plaintiff Association of Apartment of [sic] Owners of Royal Aloha" entered on May 5, 2015.

We remand this case to the Circuit Court of the First Circuit for proceedings consistent with this Opinion.