Filed 6/24/26  Sundholm v. Hollywood Foreign Press Assn. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| MAGNUS SUNDHOLM,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>HOLLYWOOD FOREIGN PRESS ASSOCIATION et al.,<br><br>Defendants and Respondents. | B324842<br><br>(Los Angeles County Super. Ct. No. 21STCV44898) |

APPEAL from judgments of the Superior Court of Los Angeles County, Wendy Chang, Judge.  Affirmed.

One LLP, David W. Quinto and Joanna Ardalan for Plaintiff and Appellant.

Latham & Watkins, Marvin S. Putnam, Robert J. Ellison and Chandler S. Howell for Defendants and Respondents.

————————————————

Magnus Sundholm appeals from the judgments of dismissal entered after the trial court sustained without leave to amend the demurrer of the Hollywood Foreign Press Association (HFPA) and 14 members of the HFPA's board of directors to Sundholm's amended complaint for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the right to fair procedure, and (as to the individual defendants) wrongful discharge. On appeal, Sundholm argues the court unreasonably interpreted the plain language of the HFPA's bylaws, erred in finding there was no breach of the implied covenant of good faith and fair dealing, and failed to apply the right to fair procedure to the HFPA's decisionmaking process. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *Sundholm's Expulsion from the HFPA*[1]

The HFPA is a nonprofit mutual benefit corporation whose members are entertainment journalists living in the United States who publish their work in media outlets outside the United States. Sundholm became a member of the HFPA in 2008.

Sundholm enjoyed a positive relationship with the HFPA until 2020, when Sundholm's girlfriend sued the organization for repeatedly refusing to admit her for membership. Five HFPA members told Sundholm that the HFPA "wanted to punish him" in retaliation for his girlfriend's lawsuit. Sundholm decided to protect himself by filing a whistleblower complaint with the Internal Revenue Service (IRS) in August 2020, alleging the

---

[1]     For purposes of the appeal, we recite the facts as alleged in the amended complaint.

2

HFPA had failed to comply with its obligations as a tax-exempt corporation.

During the course of the IRS's investigation into Sundholm's whistleblower complaint, the IRS sent Sundholm a power-of-attorney form to authorize the IRS to communicate directly with Sundholm's attorney. The form requested the name of the "taxpayer." Sundholm's attorney mistakenly identified the HFPA as the "taxpayer" on the form because the HFPA was the entity being investigated. Six months later the IRS sought confirmation from the HFPA that Sundholm was an authorized representative of the HFPA, as indicated on the form. Sundholm alleged the "misunderstanding was immediately corrected without any detriment to the HFPA."

On October 1, 2021 the HFPA president wrote to Sundholm "accusing him of 'fraudulent, illegal' conduct that was 'contrary to the interests of the HFPA. . . . She claimed that the HFPA was 'evaluating whether to take disciplinary action' and offered Mr. Sundholm the 'opportunity to be heard by the Board' on October 18, 2021. . . . [She] added that Mr. Sundholm faced 'expulsion, termination [sic] and/or suspension of membership.'" The "fraudulent, illegal" conduct referenced in the letter was the misrepresentation to the IRS that Sundholm held power of attorney for the HFPA.

According to Sundholm, the October 18 meeting "was a choreographed show trial" at which he was not permitted to be represented by counsel. After making a statement to the board, he was "met with silence. Not only did no one ask Mr. Sundholm any question, but he was not allowed to call any other witness and the HFPA presented no evidence of its own." The next day, the HFPA expelled Sundholm from its membership.

B.      *The Amended Complaint and Demurrer*

Sundholm filed this action in December 2021 against the HFPA and 14 members of its board of directors (the individual defendants).  The amended complaint alleged causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing against the HFPA based on its breach of the HFPA's bylaws, which Sundholm alleged constituted a contract among the HFPA's members.  Further, the bylaws set forth the obligations of membership, including the grounds for the board to remove and impose sanctions on members.  The complaint alleged the HFPA breached its bylaws by revoking Sundholm's membership because the bylaws allowed the board to expel a member only for violation of certain express obligations stated in the bylaws, and Sundholm had not violated those express obligations.  Further, the HFPA breached the implied covenant by summarily terminating Sundholm's membership without good cause.

The complaint also alleged causes of action against all defendants for violation of the common law right to fair procedure and wrongful termination.  In support of the claim for violation of the right to fair procedure, the complaint alleged membership in the HFPA was a "valuable interest that could not be arbitrarily withdrawn" and the HFPA failed to employ fair procedures before expelling him.  The wrongful termination cause of action alleged as to all defendants that Sundholm was employed by the HFPA on its photography committee, earning an annual salary of $30,000.  When his membership was terminated, Sundholm's employment likewise ceased in violation of the public policy protecting whistleblowers.

4

The HFPA and the individual defendants demurred to the amended complaint, arguing it failed to state a claim for relief. On the breach of contract cause of action, the HFPA argued the bylaws did not limit the grounds for expulsion to violations of certain express obligations, and the trial court should not disturb the HFPA's reasonable interpretation of its bylaws. Further, the complaint failed to state a claim for breach of the implied covenant because it failed to allege breach of a specific contractual provision, instead relying on the same set of facts as the defective breach of contract cause of action.

The HFPA and the individual defendants argued with respect to the cause of action for violation of the right to fair procedure that the right did not apply to the HFPA because membership is not "a practical prerequisite" for participation in the profession and the organization does not "perform[] a role that is 'quasi-public' in nature." Further, the doctrine could not be applied to the individual defendants. Finally, the HFPA and the individual defendants argued Sundholm was not an employee of the HFPA and, even if he had been, the individual defendants could not be liable for wrongful discharge.

C.    *The Trial Court's Ruling*

After a hearing, on October 20, 2022 the trial court sustained without leave to amend the demurrer to the breach of contract, breach of the implied covenant, and violation of the right to fair procedure causes of action. With respect to the breach of contract cause of action, the court rejected as unreasonable Sundholm's interpretation of the HFPA bylaws, which were attached to the amended complaint, that "a member who meets all express obligations [stated in the bylaws] is

5

guaranteed membership, rather than simply eligible for the rights of membership." The court further found the claim for breach of the implied covenant was based on the same conduct as the breach of contract claim and, therefore, Sundholm had not stated an independent claim for breach of the implied covenant.

Regarding the claim for violation of the right to fair procedure, the trial court found Sundholm had not sufficiently alleged that the right applied to the HFPA because he had not alleged the HFPA "controlled [his] ability to work." In addition, Sundholm failed to provide any legal authority that individual board members could be liable for violation of the right to fair procedure.

The trial court sustained the demurrer to the wrongful discharge claim against the individual defendants on the basis the complaint did not allege the individual defendants employed Sundholm. But the court overruled the demurrer to the cause of action against the HFPA, finding Sundholm adequately alleged he was terminated from his employment with the HFPA in violation of public policy.

The trial court entered a judgment of dismissal of the individual defendants on November 17, 2022. After Sundholm dismissed his wrongful discharge cause of action against the HFPA, on June 1, 2026 the court entered a judgment of dismissal as to the HFPA. Sundholm timely appealed.[2] On January 10,

---

[2] Sundholm filed his notice of appeal prior to entry of judgment against the HFPA. We treat Sundholm's premature notice of appeal with respect to the HFPA as having been filed immediately after entry of judgment. (See Cal. Rules of Court, rule 8.104(d)(2).) On appeal, Sundholm does not argue the trial

6

2023, following a request for dismissal, the clerk of the court entered a dismissal of the HFPA without prejudice with respect to the wrongful discharge claim.

## DISCUSSION

A.    *Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Matthews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) When evaluating the complaint, "we assume the truth of the allegations." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209; accord, *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.) "'"'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.'"'" (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.)

"'Where the complaint is defective, "[i]n the furtherance of justice great liberality should be exercised in permitting a

court erred in sustaining the demurrer on the wrongful discharge claim against the individual defendants.

Sundholm also appealed the trial court's order granting the HFPA's motion to disqualify Sundholm's counsel based on his review of allegedly privileged documents. We reversed, holding there was no evidence that possession of the documents by Sundholm's attorney would prejudice the HFPA in this proceeding. (*Sundholm v. Hollywood Foreign Press Association* (2024) 99 Cal.App.5th 1330.)

7

plaintiff to amend his [or her] complaint."'" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970-971.) A plaintiff may demonstrate for the first time to the reviewing court how a complaint can be amended to cure the defect. (Code Civ. Proc., § 472c, subd. (a) ["[w]hen any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made"]; see *Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132 [plaintiff may for the first time on appeal meet its burden of proving an amendment would cure a legal defect].)

B.      *The Trial Court Did Not Err in Sustaining the Demurrer to the Breach of Contract Cause of Action*
        1.      *Governing law*
        The bylaws of voluntary associations, including nonprofit mutual benefit corporations, are binding contracts between the members and the association. (See *Juarez v. Ward* (2023) 88 Cal.App.5th 730, 741; *Hee Shen Cemetery & Benevolent Assn. v. Yeong Wo Assn.* (2024) 100 Cal.App.5th 231, 238 [the bylaws of a private voluntary association "'constitute a contract between the association and its members, and the rights and duties of the members as between themselves and in their relation to the association, in all matters affecting its internal government and the management of its affairs, are measured by the terms of [its] constitution and by-laws'"]; *Berke v. Tri Realtors* (1989) 208 Cal.App.3d 463, 466 [same].)

We construe corporate bylaws under the same rules we use to interpret statutes and contracts.  (*Singh v. Singh* (2004) 114 Cal.App.4th 1264, 1294.)  "[W]e must interpret a contract in a manner that is reasonable and does not lead to an absurd result."  (*Roden v. AmerisourceBergen Corp*. (2010) 186 Cal.App.4th 620, 651.)  """"The words of a contract are to be understood in their ordinary and popular sense.'  [Citations.]" [Citation.]  Furthermore, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.""""  (*Flores v. Nature's Best Distribution, LLC* (2016) 7 Cal.App.5th 1, 9.)

2.    *Relevant provisions of the HFPA bylaws*

Article III of the HFPA bylaws sets forth the obligations and requirements for becoming a member and renewing membership, as well as the procedures for termination of membership.  Section 3.2, titled "Membership Eligibility Requirements," states that "Active Members" must live in the United States, work as journalists covering the entertainment industry, and produce a "minimum number of entertainment-related articles, photographs, and/or broadcasts" during the relevant time period.  (§ 3.2(A)(1), underlining omitted.)  Active Members must also attend at least 50 percent of regular meetings annually and attend at least 50 HFPA-sponsored press conferences annually.  (*Ibid*.)  Members must establish they have satisfied these requirements each year in order to maintain their membership status.  (§ 3.2(A)(3).)  Members who have not met these requirements may have their membership terminated by the board of directors.  (§ 3.4(B).)

Section 3.5 of the bylaws requires that members pay dues annually and "sign and submit an affirmation that they have read and agree[d] to abide by the Association's Code of Conduct." (§ 3.5(D).) Members who fail to pay dues or submit the code of conduct affirmation by the time specified "shall be considered delinquent." (§ 3.5(A).)

Termination of membership is governed by section 3.6, titled "Good Standing, Expulsion, Suspension or Termination of Membership." (Underlining omitted.) Section 3.6(A) states, "Membership and its attendant rights and privileges, including voting, shall be conditional upon the Member having met their express obligations set forth in these Bylaws. A member who has met all express obligations, including payment of all dues, shall be considered to be in good standing and eligible to exercise the rights of a Member as set forth in these Bylaws."

Section 3.6(B) states, "Any Member may be expelled, suspended or terminated provided that the procedures in this subsection are followed." The procedures include that the member must be given 15 days' notice of the expulsion, termination or suspension and "shall be given the opportunity to be heard by the Board of Directors . . . not less than five days before the effective date" of the proposed action. Section 3.6(C) provides, "Any Member who is not in good standing may be suspended subject to the notice and hearing requirements set forth in this section."

3.   *The plain language of the bylaws does not support the breach of contract cause of action*

Sundholm argues the bylaws do not specify that fraudulent and illegal conduct contrary to the interests of the HFPA (the

10

alleged reason for his termination) is a ground for termination, and therefore his termination violated the bylaws. Sundholm relies on the language in section 3.6(A) that membership is conditioned on members meeting their "express obligations" set forth in the bylaws, and that members who have met those express obligations shall be considered to be in "good standing and eligible" to exercise their membership rights. Sundholm argues this language should be interpreted to mean that once a member has met the express obligations articulated in the bylaws, including the payment of dues, his or her membership cannot be terminated for any reason because meeting these obligations places the member in "good standing."

Sundholm's interpretation of the bylaws is contrary to their plain language. The fact that membership (and being in good standing as a member) is conditioned on a member meeting his or her express obligations does not mean an individual is guaranteed membership once those obligations are met. Sundholm's construction would require us to rewrite the bylaws to state that a member's meeting of the express obligations was the *exclusive* condition for membership, instead of the actual language, which specifies the payment of dues and other express obligations are a necessary condition for a member to be in good standing as a member.

Sundholm likewise contends that once an individual has established eligibility for membership, membership is guaranteed and "no separate showing is required." To the contrary, the word "eligible" means "[f]it and proper to be selected or to receive a benefit; legally qualified for an office, privilege, or status." (Black's Law Dict. (12th ed. 2024).) Thus, the fact an individual is eligible for something does not confer a benefit, but rather, it

11

means the individual *has the potential to receive the benefit.* For example, an individual who is eligible to be President of the United States does not automatically become the President; rather, the individual must be selected by the electorate.

Indeed, the word "eligible" is used in this manner in Section 3.3 of the bylaws, which sets forth the application process for new members. Section 3.3(B) states that "to be considered" for membership, an individual must, among other things, submit an application and a letter of recommendation and have produced the required number of journalistic works. Section 3.3(E) refers to these requirements as the "eligibility requirements for membership." An applicant's satisfaction of the eligibility requirements does not guarantee membership in the HFPA. Instead, the "Credentials Committee shall then consider each applicant meeting the requirements . . . and determine whether such applicant shall be admitted." (§ 3.3(D).) The committee is directed to consider such factors as the applicant's expertise, commitment to advancing the mission of the HFPA, and whether the applicant would provide a diverse perspective. It is not a reasonable interpretation of the bylaws that they define the term "eligible" in section 3.3 to mean the minimum requirements for an individual *to be considered* for membership but in section 3.6(A) to mean an individual has a *guarantee* of membership.

Further, Sundholm's interpretation that a member in good standing may never be expelled from the HFPA is inconsistent with the language in Section 3.6(B), which states, "*Any* Member may be expelled, suspended or terminated provided that the procedures in this section are followed." (Italics added.) This provision does not state that only members not in good standing

12

may be terminated, but that *any* member may be terminated. Sundholm has not provided any explanation for how this provision could be interpreted to limit termination to members not in good standing.

Finally, Sundholm contends that interpreting the bylaws to allow the HFPA to expel him based on allegedly fraudulent and illegal conduct is untenable because "it would allow members to be expelled for any reason, whether that reason be personal animosity, rejection of sexual advances, or objection to a member's hair style. The bases for expelling members should be tethered to *something*." Although Sundholm may be frustrated by what he believes was an arbitrary expulsion, nothing in the bylaws prevented the HFPA from expelling him based on its belief he engaged in fraudulent and illegal conduct.

C.    *The Trial Court Did Not Err in Sustaining the Demurrer on the Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing*

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*. [Citation.] The covenant thus cannot "'be endowed with an existence independent of its contractual underpinnings.'" [Citations.] It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 349-350 (*Guz*); accord, *Bevis v. Terrace View Partners, LP* (2019) 33 Cal.App.5th 230, 252 ["It is well settled that 'an implied covenant of good faith and fair dealing cannot contradict the express terms of a contract.'"].)

13

A claim for breach of the implied covenant "must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395; accord, *VFLA Eventco, LLC v. William Morris Endeavor Entertainment, LLC* (2024) 100 Cal.App.5th 287, 312.) "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." (*Careau & Co.*, at p. 1395; accord, *Guz, supra*, 24 Cal.4th at p. 352 ["But insofar as the [defendant's] are directly actionable as a breach of an implied-in-fact contract term, a claim that merely realleges that breach as a violation of the covenant is superfluous."].)

Sundholm argues his breach of the implied covenant cause of action does not merely restate his contract claim because the contract claim alleges there "was no substantive basis" for his expulsion, whereas the implied covenant claim alleges "the procedure by which [Sundholm] was expelled from membership was unfair." However, as alleged, the HFPA complied with the notice and hearing provisions of its bylaws: Sundholm was given more than 15 days' notice of the expulsion in writing; he was provided the reasons for the expulsion; and he was given the

14

opportunity to be heard by the board at a hearing. Sundholm argues the board meeting was a "choreographed show trial" because he was prevented from having legal representation and the board members asked no questions and presented no evidence. However, the bylaws did not require a specific type of hearing or findings by the board. For example, the bylaws did not require the board to allow Sundholm to have an attorney present, engage in dialogue with the board, or call witnesses. Thus, Sundholm has not identified any requirement of the bylaws that was unfairly denied to him. (See *Guz, supra*, 24 Cal.4th at p. 349 [the implied covenant serves "merely to prevent one contracting party from unfairly frustrating the other party's right to receive *the benefits of the agreement actually made*"].) Sundholm cannot rely on the implied covenant to impose requirements that are not enumerated in the bylaws. (See *id*. at p. 352 ["[t]o the extent [plaintiff's] implied covenant cause of action seeks to impose limits . . . beyond those to which the parties actually agreed, the claim is invalid"].)

D. *The Trial Court Did Not Err in Sustaining the Demurrer to the Cause of Action for Violation of the Right to Fair Procedure*

"[A] private organization's decisionmaking process can, under certain circumstances, be subject to a common law right of fair procedure," which is subject to judicial review. (*Yari v. Producers Guild of America, Inc.* (2008) 161 Cal.App.4th 172, 174 (*Yari*).) This common law right is typically applied in cases concerning the "exclusion or expulsion from membership in a gatekeeper organization, such as a labor union, [which] hold that 'the right to practice a lawful trade or profession is sufficiently

"fundamental" to require substantial protection against arbitrary administrative interference, either by government [citations] or by a private entity.'" (*Id.* at p. 176; see *Potvin v. Metropolitan Life Ins. Co.* (2000) 22 Cal.4th 1060, 1069 (*Potvin*) [the rationale of the cases applying the common law doctrine of fair procedure "'is that certain private entities possess substantial power either to thwart an individual's pursuit of a lawful trade or profession, or to control the terms and conditions under which it is practiced.'"].)  "[W]hen the right to fair procedure applies, the decisionmaking 'must be both substantively rational and procedurally fair.'" (*Potvin*, at p. 1066.)

"For the doctrine to apply, individuals need not show that they would be fully unable to practice their chosen profession absent membership in the organization; they can instead show that 'exclusion from membership . . . deprives [them of] substantial . . . educational, financial, and professional advantages.'" (*Boermeester v. Carry* (2023) 15 Cal.5th 72, 88.) However, even if a plaintiff can demonstrate deprivation of a substantial professional advantage, the right to fair procedure does not apply unless the organization affects the public interest. As the Supreme Court explained in *Potvin*, the organizations to which the court has applied the right to fair procedure "all shared an attribute of significance in our determination that they were subject to the common law right to fair procedure.  Each one was a private entity affecting the public interest.  As has been recognized:  '[C]ertain institutions and enterprises are viewed by the courts as quasi-public in nature:  The important products or services which these enterprises provide, their express or implied representations to the public concerning their products or services, their superior bargaining power, legislative recognition

16

of their public aspect, or a combination of these factors, lead courts to impose on these enterprises obligations to the public and the individuals with whom they deal, reflecting the role which they have assumed, apart from and in some cases despite the existence of a contract.'" (*Potvin, supra*, 22 Cal.4th at p. 1070; accord, *Palm Medical Group, Inc. v. State Comp. Ins. Fund* (2008) 161 Cal.App.4th 206, 215 ["[t]he doctrine applies primarily to decisions affecting membership in private organizations that affect the public interest"].)[3]

The Ninth Circuit in *Flaa v. Hollywood Foreign Press Association* (9th Cir. 2022) 55 F.4th 680 (*Flaa*) addressed the precise issue here—whether the HFPA was a quasi-public entity subject to the common law right to fair procedure. The plaintiff in that case was Sundholm's girlfriend, who sued the HFPA for violation of the right to fair procedure based on the organization's repeated denial of her membership application. (*Id.* at p. 687.) Flaa argued the right applied to the HFPA because "the entertainment industry is economically significant." (*Id.* at p. 696.) The Ninth Circuit rejected Flaa's argument, explaining, "To determine if an organization is quasi-public, California courts look to factors such as whether the organization produces particularly important products or services, provides express or implied representations to the public, receives legislative recognition of its public character, or possesses superior bargaining power. [Citation.] Examples of quasi-public organizations include labor unions and medical and dental licensing organizations." (*Id.* at p. 695, citing *Ezekial v. Winkley*

---

[3]     Sundholm argues the right to fair procedure is not limited to quasi-public entities, but he cites no authority for application of the doctrine to entities that are not considered quasi-public.

17

(1977) 20 Cal.3d 267, 271 and *Potvin, supra*, 22 Cal.4th at p. 1169.)  The court held the HFPA "does not provide 'important products or services' to the public, does not make representations about the qualifications of its members (as a licensing entity does), and has received no legislative recognition as a quasi-public association." (*Flaa*, at p. 695.)  We agree with the Ninth Circuit's reasoning and see no reason to depart from it here. Sundholm has not alleged the HFPA's activities affect the public interest as contemplated by *Potvin*. (*Potvin*, at p. 1169.)

We likewise reject Sundholm's argument that the HFPA is a quasi-public entity because "the public interest include[s] news reporting." As the Court of Appeal reasoned in *Yari*, although it is true that "the public is interested in the motion picture industry[,] [t]hat does not mean that industry-related organizations . . . operate in the public interest." (*Yari, supra*, 161 Cal.App.4th at p. 180 [holding the Academy of Motion Picture Arts and Sciences and the Producers Guild of America were not quasi-public entities to which the right to fair procedure applied]; see *Flaa, supra*, 55 F.4th at p. 696 ["[i]t is not enough that an *industry* is important to the public; rather, the right of fair procedure applies only when an *organization* possesses characteristics that make it quasi-public in nature"].)  Sundholm has not cited any cases in which the right to fair procedure was applied to an organization because it was involved in the journalism industry, and the cases he relies on are inapposite.[4]

---

[4]     Likewise, Sundholm has not provided support for his assertion that non-profit organizations are automatically subject to the right to fair procedure. (See, e.g., *Regan v. Taxation with Representation of Washington* (1983) 461 U.S. 540, 542, 551 [rejecting nonprofit organization's argument it should be granted

(See, e.g., *Gionfriddo v. Major League Baseball* (2001) 94 Cal.App.4th 400, 404, 410-411 [court observed that "entertainment features receive the same constitutional protection as factual news reports" and "command a substantial public interest" for purposes of determining whether publication of baseball players' names, images, and likenesses was protected by the First Amendment].)

Finally, Sundholm argues his right to fair procedure cause of action against the individual defendants was properly alleged because directors may be liable for tortious acts committed on behalf of a corporation. However, because Sundholm has not sufficiently alleged the right to fair procedure applies to the HFPA, the right likewise does not apply to the board members' actions.[5]

---

tax-exempt status because it promoted the "public interest" notwithstanding activities to influence legislation]; see also *Flaa, supra*, 55 F.4th at p. 696 [rejecting Flaa's argument the right to fair procedure applied to tax-exempt organizations, observing "the California courts have given no indication that fair procedure doctrine applies so broadly"].)

[5] Sundholm does not argue on appeal that the trial court abused its discretion in denying leave to amend, nor does he address how he could amend the complaint to cure its legal defects. We therefore affirm the trial court's denial of leave to amend. (*Spears v. Spears* (2023) 97 Cal.App.5th 1294, 1307 [affirming denial of leave to amend in light of plaintiff's failure to identify a specific allegation that would cure the defect in his claim]; *Lebrun v. CBS Television Studios, Inc.* (2021) 68 Cal.App.5th 199, 212 [affirming denial of leave to amend where plaintiffs "[did] not suggest how they could amend the complaint"].)

## DISPOSITION

The judgments of dismissal are affirmed.  The HFPA and the individual defendants are to recover their costs on appeal.


FEUER, J.

We concur:


MARTINEZ, P. J.


SEGAL, J.